Richmond.

CARY V. HARRIS AND OTHERS.

January 11, 1917.

1. RESCISSION—*Fraud—Evidence.*—It is elementary that a party alleging fraud is required to prove the same by clear and convincing testimony, and this is particularly true in cases involving the rescission of a contract.

2. RESCISSION—*Compromise Contract.*—Compromise agreements are favored and where their rescission is sought on the ground of fraud or duress such fraud or duress must be clearly and convincingly shown.

3. COMPROMISE AND SETTLEMENT—*Duress.*—A contract of compromise, entered into with full knowledge of all the facts, cannot be set aside on the ground of duress when the other party has not been guilty of any unlawful act. The fact that one of the parties entered into such a contract reluctantly, or was badly in need of money at the time, is not sufficient to constitute duress.

4. COMPROMISE AND SETTLEMENT—*Fraud.*—If a party makes a deliberate settlement of an alleged fraud, with his eyes wide open, such settlement will not be disturbed. Parties may settle frauds as well as anything else, if they act with knowledge of the facts; and such a settlement is as effectual when made by the parties, as when made by a court.

Appeal from a decree of the Chancery Court of Richmond. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*James E. Cannon* and *Samuel A. Anderson,* for the appellant.

*G. A. Hanson* and *P. W. Hardin,* for the appellees.

HARRISON, P., delivered the opinion of the court.

This is the second appearance of this cause upon the docket of this court. See *Harris* v. *Cary,* 112 Va. 362, 71 S. E. 551, Ann. Cas. 1913-a, 1350. At the first hearing a demurrer to the complainant's bills, original, amended and supplemental, which had been sustained by the lower court, was overruled and the cause remanded for further proceedings, this court holding that the bills stated a good cause of action, entitling the complainant to relief, if the facts alleged were established by the evidence to be adduced. The cause is now heard upon its merits, the question being, has the complainant by the evidence adduced established the facts alleged, so as to entitle him to the relief prayed for.

The salient facts alleged are stated in *Harris* v. *Cary, supra,* and need not be repeated in detail here. This suit was brought for the rescission or cancellation of two contracts, one dated March 6, 1908, and the other March 18, 1908, upon the ground that said contracts were obtained from him by force, fraud, intimidation and duress. The contract of March 18, 1908, was the necessary result of the contract dated March 6, 1908, and neither added to nor took from the latter. It is the contract of March 6, 1908, known in this record as the "March contract," around which this controversy revolves, and to which our attention is chiefly directed.

It appears from the record that the complainant, J. W. Harris, his brother, W. E. Harris, and the latter's wife, Caroline H. Harris, and W. M. Cary, were engaged in obtaining options and buying coal lands in Buchanan county, Virginia, for purposes of speculation, and that in further-ance of this enterprise "The Buchanan Coal and Coke Company" was organized and chartered, in which these parties held stock in proportion to their respective interests. For his interest the complainant, J. W. Harris, was to furnish

no money, but was to remain in Buchanan county, prospect for coal in conjunction with W. E. Harris, take options on land, and do what was necessary there to promote and advance the venture. By contract dated May 23, 1904, it was agreed that the money advanced in furtherance of the scheme would constitute the preferred stock of the company and be first paid back with interest, and that all other money, land or property remaining to the corporation, should be treated as profit and belong to the common stockholders, and that J. W. Harris, in lieu of his services rendered in securing the property and to be rendered until the preferred stock was redeemed, should receive one-third of the common stock to be issued.

It is apparent from the record that the contemplated purchases under this contract were very modest compared with those that were subsequently made. Very soon thereafter much larger purchases were made than had been contemplated, and W. M. Cary, who had to pay three-fourths of the purchase money, realizing that this increased expenditure would greatly increase his risk, notified the Harrises that, under the circumstances, he considered the allowance to J. W. Harris, under the May contract, of one-third of the profits for securing options, unduly large, and thereupon, after considering the matter, the parties entered into the contract dated September, 1904, by which the May contract was modified in respect to the division of the common stock of the company. By the terms of this contract the complainant was to receive two-ninths of the common stock instead of one-third thereof, as provided in the May contract.

After the September, 1904, contract was executed, the ideas of the parties still further expanded, the complainant particularly urging that more lands be bought, until March, 1908, when the company had acquired more than 23,000 acres and W. M. Cary had expended $60,000 in paying for

them. During the time from 1904 to 1908 when these largely added purchases were made, W. M. Cary repeatedly told the Harrises that in view of the increased purchases, which entailed upon him heavier and more serious risks, there would have to be a different distribution of the common stock from that which existed under the September contract. The record shows that there was considerable correspondence and difference of opinion on this subject, until the contract of March, 1908, was executed. That was clearly a compromise adjustment and intended as a final settlement of all differences between the parties.

After this contract had been duly executed, under seal, by the complainant, J. W. Harris, and his brother, W. E. Harris, and by the appellant, W. M. Cary, it was kept by the Harrises, or one of them, for several days and then returned to W. M. Cary with the signature of Caroline H. Harris thereto. This contract recites that differences existed between the parties concerning their respective rights, and that they were desirous of terminating those differences and arriving at an equitable agreement with respect to their interests in the stock of the company, and that, therefore, in consideration of the premises and the mutual concessions moving to and from the parties, the contract was made. It provides that an issue of common stock (which had not theretofore been made) should be made as soon as possible after its execution, and that the complainant, J. W. Harris, should receive three-eighteenths thereof in return for services rendered, and that he should not be required to remain longer on the property of the company.

This is the solemn contract under seal which the complainant asks to have rescinded upon the ground that it was obtained from him by force, fraud, intimidation and duress.

It is elementary that a party alleging fraud is required to prove the same by clear and convincing testimony, and

this is particularly true in cases involving the rescission of a contract.

In *Virginia-Carolina Co.* v. *Carpenter*, 99 Va. 292, 38 S. E. 143, it is said: "To act in bad faith is to act fraudulently, and, as everyone has attached to his actions the presumption of innocense, it is an established principle that a charge of fraud or bad faith must be clearly and distinctly proven." Citing *Hood* v. *Colbert*, 28 Gratt. (69 Va.) 49; *Gregory* v. *Peoples*, 80 Va. 355.

In *Bonsal* v. *Camp*, 111 Va. 595, 60 S. E. 978, cited with approval in *Sweeney* v. *Foster*, 112 Va. 499, 71 S. E. 548, it is said: "One of the first principles with respect to the rescission of a contract is that, in seeking a remedy which calls for the highest and most drastic exercise of the power of a court of chancery—to annul and set at naught the solemn contract of parties—there must be first a sufficient averment of facts showing the plaintiff entitled in equity to the relief which he seeks, and satisfactory proof of these facts, to justify the interposition of the court; and in addition to all this the court must be able substantially to restore the parties to the position which they occupied before they entered into the contract."

In the recent case of *Ford* v. *Engleman*, 118 Va. 89, 86 S. E. 852, Judge Keith says: "Duress is a species of fraud and hence must be clearly proved."

Authorities upon this point might be multiplied, but it is too well settled to call for further discussion.

It cannot be expected that this court, within the limits of an opinion, can go into a detailed consideration of the great mass of evidence presented by the record before us. It is sufficient to say that, after a careful and laborious examination of all the evidence adduced, we are of opinion that the complainant has failed to establish the charges in his bills with that degree of clearness and certainty that the law requires. On the contrary the decided weight of the

evidence and the circumstances attending the execution of the contract establish the negative. The contract, the rescission of which is here asked, is under the hands and seals of the parties, and appears upon its face to be an equitable settlement of differences of opinion, and the evidence shows that it was intended as a compromise of all matters in dispute between them. Compromise agreements are favored. They are properly resorted to every day as a means of avoiding litigation, by a final adjustment of disputed matters by the parties themselves.

In *U. S.* v. *Child,* 12 Wall. 232, 20 L. Ed. 360, Mr. Justice Miller, speaking for the Supreme Court says: "We can hardly conceive of a definition of duress that would bring this case within its terms. Authorities are cited to show that where, under peculiar circumstances property is withheld from the owner and he is forced to pay some unjust demand to obtain possession of it, he can afterwards maintain a suit for the money so paid. But no case can be found, we apprehend, where a party, who, without force or intimidation and with a full knowledge of all the facts of the case, accepts on account of an unlitigated and controverted demand, a sum less than what he claims and believes to be due him, and agrees to accept that sum in full satisfaction, has been permitted to avoid his act on the ground that this is duress. If the principle contended for here be sound, no party can safely pay by way of compromise any sum less than what is claimed of him, for its compromise will be void as obtained by duress. The common and generally praiseworthy procedure by which business men every day sacrifice part of claims which they believe to be just to secure payment of the remainder would always be duress, and the compromise void."

The case of *Andrews* v. *Conolly* (C. C.) 145 Fed. 43, in which the disputes and disagreements between the parties arose over mining properties and continued for years before

33

the final written contract was executed, presents some striking analogies to the case at bar. The court, after stating that it did not deem it necessary to review the history of the various disputes between the brothers, nor to attempt to fix the blame therefor, and further that it was sufficient for the purposes of the case that such disputes did in fact exist, and that the parties attempted to settle them by a written contract wherein the rights of the parties were defined, expressed the opinion that there was no duress; and in discussing the subject said, in part: "The proofs contained in the record do not show that Michael Connolly did any unlawful act to deprive the defendant of his property, or to compel him to do what he acknowledges he did do, yield to the pressure of the circumstances surrounding him and sign the agreement of settlement. I think the signing of the contract, under the circumstances disclosed by the record in this case, must be regarded, both at law and in equity, as a voluntary act, as it was unattended by any act of violence or threat of any kind calculated in any degree to intimidate the defendant, or to force the result, or to compel that consent which is the essence of every valid contract. Suppose he consented reluctantly, as he doubtless did, still the fact remains that he did consent when he might have refused, and, having consented and signed the contract, I think he is bound by its terms. This is especially true when we come to consider the character of the transaction and the relation of the parties to the contract. It was entered into for the purpose of defining the rights of the parties and putting an end to the disputes and disagreements which had theretofore existed between the brothers."

In *French* v. *Shoemaker*, 14 Wall. 314, 20 L. Ed. 852, second syllabus, it is said: "Equity will not set aside a contract whose purpose is a settlement of disputes, simply because one party to it was in want of money when he made it, and because such want may have been an inducing cause for

his making it; the party having been an intelligent person, who acted deliberately and with knowledge of what he was doing. Equity favors amicable compromise of controversies where pecuniary interests are complicated and conflicting." See also *Mason* v. *United States,* 17 Wall. 67, 21 L. Ed. 564, *Hackley* v. *Headley,* 45 Mich. 569, 8 N. W. 511, *Batavian Bank* v. *North,* 114 Wis. 637, 90 N. W. 1016; *Ham* v. *Hamilton,* 29 Ga. 40.

These decisions all declare the doctrine that a contract of compromise, entered into with full knowledge of all the facts, cannot be set aside on the ground of duress when the other party has not been guilty of any unlawful act.

As said in *Ham* v. *Hamilton, supra:* "If the complainant ever had any equity, it is clear he has *settled himself* out of it. He made a deliberate settlement of all the alleged fraud, with his eyes wide open. Parties may settle frauds as well as anything else, if they act with knowledge of the facts; and such settlement is as effectual when made by the parties as when made by a court. He is here asking the court to act where he has already himself taken final action. There must be an end to litigation."

The complainant in the court below has, at the bar of this court, pressed upon our notice the contention that a fiduciary relationship existed between himself and the appellant; that the appellant as president of the company and owning a controlling interest in the stock occupied the position of trustee for the benefit of the other stockholders; and that as such trustee he had violated his trust. This position does not appear to have been urged in the lower court or noticed by the learned judge who there considered the case. Without considering whether any such relation existed between those parties as is now claimed, it is sufficient to say that the record does not show that the appellant has violated any confidence reposed in him with respect to the

complainant, or done any act to his prejudice that he was under any legal duty to refrain from doing.

Upon the whole case, we are of opinion to reverse the decree appealed from and to enter here such decree as the lower court ought to have entered, dismissing the complainant's bills with costs.

*Reversed.*