## SMITH v. UNITED STATES.

### No. 11474.

Circuit Court of Appeals, Fifth Circuit.
Feb. 20, 1946.

Rehearing Denied March 20, 1946.

Before McCORD, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

The United States brought suit to establish its title, and right of possession, to certain lands in Shelby County, Texas, described by metes and bounds. The defendants were Adrian D. Smith, Zack P. Shofner, Mrs. Dewey Shofner Metcalf, Mary S. Denby, and her husband, Ray Denby. The defendant, Smith, is the grantee of the other defendants under a deed made in 1942.

The chain of title of the Government is:

E. C. Mauldin to James P. Payne (1889); Mrs. Jennie Payne to Will A. Pickering (1901); Will A. Pickering to Pickering Lumber Company (1906); Pickering Lumber Company to United States (1935); decree in the case of Hicks, Receiver of Pickering Lumber Company v. Zack Shofner, one of the Defendants (1933); disclaimer of title and quit claim by Zack Shofner and his sister, Mrs. Dewey Shofner Metcalf, and application by them for the privilege of using a portion of the lands as tenants (1937).

The chain of title of Smith is also from Mauldin, who is the common source of title to both parties, and is as follows:

Mauldin to M. L. Shofner (1854); M. L. Shofner to Albert Shofner (1871); Albert Shofner (by death) to Zack, Mary and Dewey Shofner (1906); Zack, Mary, and Dewey Shofner, as children and sole heirs of Albert Shofner, to Adrian Smith, the Appellant (1942).

The deed in 1854 from Mauldin to M. L. Shofner, the father of Albert Shofner, anteceded by thirty-five years the deed in 1889 from Mauldin to Payne under which the United States claims.

The deeds from Mauldin to M. L. Shofner and from M. L. Shofner to Albert Shofner—the latter being the father of Zack, Mary, and Dewey Shofner—were each recorded within a few days after execution, but the Court House wherein their deeds were recorded burned in 1882, and these deeds from Mauldin to M. L. Shofner and from M. L. Shofner to Albert Shofner were not re-recorded until 1942 and 1937, respectively.

A copy of a map of the Mary Ann Haley Survey, wherein the lands lay, was introduced in evidence, and revealed the following data: "Mary Ann Haley to E. C.

Gilbert T. Adams, of Beaumont, Tex., for appellant.

Kelsey Martin Mott and Roger P. Marquis, Attys., Department of Justice, and J. Edward Williams, Acting Head, Lands Division, Department of Justice, all of Washington, D. C., and John D. Rienstra, Asst. U. S. Atty., of Beaumont, Tex., for appellee.

Mauldin, 2200 acres, November 10, 1841." This, plus the fact that Mauldin's deed to M. L. Shofner called for 400 acres and his deed to James P. Payne called for 1709 acres, indicates that before execution of either of these deeds Mauldin owned in excess of 2100 acres in the Mary Ann Haley Survey.

The deed from Mauldin to Payne, under which the Government, by mesne conveyances, claims title, contained language that seems significant: "A certain tract or parcel of land * * * being *our whole interest* in the Mary Ann Haley and Thos. Haley H. R. Survey and containing 1709 acres, more or less * * *." (Emphasis added.)

In the metes and bounds description reference is made to "Shofner's line" and "Shofner's corner" and at the end of this description the following exception is noted: "This sale includes all the land ever owned by one of [sic., me in] M. A. Haley and Thos. Haley H. R. *except what I sold to different parties.*" (Emphasis added.)

Judgment by default was taken against all the defendants except Adrian D. Smith, who answered, denying the allegations of the plaintiff's petition and asserting that he, and those from whom he held title, had been in peaceful and continuous possession of the lands in suit for a period of more than ten consecutive years after the plaintiff's cause of action, if any, had accrued, and that the plaintiff's action was barred by the ten-year statute of limitations of the State of Texas.

The defendants undertook to show adverse possession for more than ten years by them and their ancestral predecessors in title and also to show that the quit claim, disclaimers, and applications for a permit to use and occupy a portion of the land were procured by threats and duress.

On December 30, 1933, the Receiver of Pickering Lumber Company procured a default judgment against Zack Shofner wherein the Lumber Company was adjudged to be the owner in fee simple of the lands in question and entitled to the possession thereof. By reason of this judgment, counsel for appellant concedes that Zack Shofner lost his undivided one-third interest as a tenant in common with his sisters, Mary and Dewey, in said lands.

It is without dispute that Zack, Mary, and Dewey Shofner were the sole surviving heirs of Albert Shofner. It should

not be disputed that they were the owners of the equitable title to the 400 acres and were also owners of the legal title unless an estoppel can be set up because of the failure to re-record the deeds to and from M. L. Shofner, by reason whereof James P. Payne, or others in plaintiff's chain of title, became innocent purchasers of the lands for value, without notice.

The lower Court found: That it was impossible to ascertain the year that Albert Shofner entered upon the lands; that Albert Shofner did not claim the lands adversely to anyone else or as his own, or that his possession was inconsistent with, or hostile to, the claim of any other person, or that he claimed it as his own, or that he cultivated and used the land for a period as long as ten years; that Albert Shofner's house was destroyed by fire in 1906 and from that time forward there was no actual possession by anyone of the lands until 1930 when Zack Shofner entered upon the land and built a house thereon; that the disclaimers and quit claims by Zack Shofner and Mrs. Dewey Metcalf were executed freely and voluntarily; that Adrian Smith had knowledge of such disclaimers and quit claim deeds before, or at the time of, his purchase; that the United States had a regular chain of title to the lands from E. C. Mauldin, the common source of title; that neither Albert nor Zack Shofner perfected a title by limitation to any portion of such land; that under Articles 6588 and 6627 of Vernon's Annotated Texas Civil Statutes, the predecessors in title of the United States were purchasers of said lands for a valuable consideration, without notice of the deed from Mauldin to M. L. Shofner and from M. L. Shofner to Albert Shofner, by reason of the failure to re-record such deeds after the destruction of the records in the Court House; that the defendant had no right, title, or interest in the land, and that the United States was entitled to possession.

It will not be necessary for us to analyze all of the evidence although several findings of fact are unsupported by evidence.

■ It is the law in Texas that the plaintiff in a suit to establish title to lands must win on the strength of his own title rather than on the weakness of his adversary.

The following statement in 41 Tex.Jur., page 497, § 33, is supported by innumerable decisions of the Texas courts:

"§ 33. Failure to Show Title—Showing by Opponent.—The plaintiff's right to re-

cover depends upon the strength of his own title and not upon the weakness of the title of his opponent. The only exception to the rule, it is said, is in case of prior possession. The defendant is not required to show title in himself; nor may the plaintiff rely upon the defendant's failure so to do. Although the defendant may have specially pleaded a title which he has failed to establish, the plaintiff is not entitled to recover unless his own title is affirmatively disclosed. The burden of proof is on the plaintiff to show, not only that the defendant has no title to the land, but that title thereto is in himself."

█ Moreover, if the plaintiff claims under a deed containing general exceptions from the over-all description, the burden is on him to show that the lands in suit were not within the lands excepted from the deed under which he claims, for one cannot convey title if he has no title to convey. See Mills v. Pitts, 121 Tex. 196, 48 S.W.2d 941, 84 A.L.R. 319.[1]

---

[1] "Since a plaintiff in trespass to try title must recover on the strength of his own title, he can never recover by merely showing a claim under deeds to those parcels of land which remain unsold by the grantors on particular dates without any proof whatever of the specific parcels of land which were unsold.

"After reviewing a number of cases announcing this rule, the Supreme Court in an opinion by Mr. Justice Williams said: 'In these cases the deeds passed title only to land not previously conveyed, and hence the plaintiffs in order to show that the conveyances passed the lands sued for, were required to show that they had not been previously sold.' Waggoner v. Dodson, 96 Tex. [415], 421, 73 S.W. 517, 518." Mills v. Pitts, 121 Tex. 196, 48 S.W.2d 941, 84 A.L.R. 319.

In Ball v. Carroll, 42 Tex.Civ.App. 323, 92 S.W. 1023, 1025, the Court of Civil Appeals of Texas made the following statement:

"* * * The grantors in the deed to Stewart only undertake to convey that portion of the Rionda grant which had not been previously conveyed by their ancestors, and in order for appellant to show title to the land in controversy under this deed he must show it was not included in the lands mentioned in the deed as having been previously disposed of by the Zacharies, and which by the express terms of the deed were not conveyed to Stewart. This proof was not made nor attempted to be made. Maxwell Land-Grant Co. v. Dawson, 151 U.S. [586], 604, 14 S.Ct. 458, 38 L.Ed. 279; Corinne [Mill, Canal & Stock] Co. v. Johnson, 156 U.S. [574], 575, 15 S.Ct. 409, 39 L.Ed. 537; Waggoner v. Dodson, Tex.Supp., 73 S.W. 518."

In Associated Oil Company v. Hart, 10 S.W.2d 791, 793, is this statement by the Court of Civil Appeals of Texas:

"This deed, like the other, would constitute no proof of title to any particular tract of land, in the absence of proof that such particular tract of land had not been sold at the date of the deed. Ball v. Carroll, 42 Tex.Civ.App. 323, 92 S.W. 1023; Waggoner v. Dodson, 96 Tex. 415, 73 S.W. 517; Corinne [Mill, Canal & Stock] Co. v. Johnson, 156 U.S. 576, 15 S.Ct. 409, 39 L.Ed. 537; Reusens v. Lawson, 91 Va. 254, 21 S.E. 347; Cox v. McClure, 71 Conn. [729], 733, 43 A. 310; Harman v. Stearns, 95 Va. [58], 71, 27 S.E. 601; Stockton v. Morris, 39 W.Va. [432], 442, 19 S.E. 531; Maxwell Land-Grant Co. v. Dawson, 151 U. S. 604, 14 S.Ct. 458, 38 L.Ed. 279."

In Maxwell Land-Grant Co. v. Dawson, 151 U.S. 586, text 604, 14 S.Ct. 458, text 464, 38 L.Ed. 279, the following pertinent statement is found:

"* * * Bearing in mind that the burden was upon the plaintiff to show its title to the identical land claimed by the defendant, it is manifest that, as the plaintiff did not take title to 15,000 acres of the Maxwell land grant by reason of the fact its grantors had already conveyed this amount of land, it was incumbent upon it to show that the land it sued to recover had not been previously conveyed, and hence that it had taken title to it under its deeds.

"An exception in a grant is said to withdraw from its operation some part or parcel of the thing granted, which, but for the exception, would have passed to the grantee under the general description. The effect in such cases in respect to the thing excepted is as though it had never been included in the deed. If, for example, a person should convey to another a block of land, excepting therefrom a certain lot previously conveyed, to sustain ejectment for any particular lot, it would be necessary for the plaintiff to show that it was not the lot which had been previously conveyed. There is a general rule, applicable both to conveyances and statutes, that where there is an exception in the general granting or enacting clause, the party relying upon such general clause must, in pleading, state the general clause, together with the exception, and must also show by the testimony that he is not within the exception."

■ Thus the law, as announced by the Texas and Supreme courts is that the plaintiff, who must recover on the strength of his own title, cannot recover by merely showing a claim in his chain which has as a link a deed to parcels of land only which remain unsold by the grantors, without making specific proof that the lands for which he sues had not been sold at the date of such deed.

■ This rule must be applied in the present case because the deed from Mauldin to Payne showed that the grantor was selling all of his right, title, and interest in any lands in the named survey which he had not previously sold. Evidently he had no intention of selling any lands which he did not own, because he expressly provided that the sale should include all lands ever owned by him in the Mary Ann and Thos. Haley Surveys *"except what I sold to different parties."*

It is quite clear that the Government must prove that the lands in suit had not been sold by Mauldin prior to the making of this deed to Payne in 1889, and failing to make such proof its case must fall, regardless of the weakness of defendant's title.

Not only did the Government fail to show that the lands involved in this suit had not been previously sold by Mauldin, but the proof is undisputed that Mauldin had sold 400 acres of these lands to Shofner in 1856.

■ The plaintiff is charged with notice of the provisions in all instruments in its chain of title.

"It is a general rule that the purchaser is charged with notice of the existence, contents and legal effect of all instruments contained in his chain of title or connected therewith. He is bound by every description, recital, reference and reservation, and by every other matter contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims. This is so regardless of whether the instrument is recorded or whether he has actually seen or read it, or has any knowledge of its contents.

"Accordingly, the purchaser is charged with knowledge of any equity or interest of a third person which is disclosed or recognized by a conveyance through which he claims, as well as notice of any fact recited or revealed in such conveyance, in the certificate of acknowledgment, or in another instrument to which the conveyance refers. And when a fact is recited which is sufficient to put a prudent man on inquiry, the purchaser is charged with notice of facts which might have been ascertained by a proper inquiry." 43 Tex.Jur. page 647, § 383.

■ Since the proof failed to show that Payne, the Government's predecessor in title, acquired any title to the lands in suit here, it likewise failed to show that the Government had acquired title to such lands. The Government acquired its deed in 1935. Neither of its predecessors in title was ever in actual possession of any of the 400 acres of these lands.

■ We think also, that a deed conveying all the right, title, and interest of the grantor in and to such parts of a tract of land as the grantor has not already sold puts subsequent purchasers upon inquiry to ascertain what part of said lands, if any, had theretofore been sold, and a subsequent purchaser cannot claim to be without notice if he had actual or constructive knowledge of a prior sale. Neither is he an innocent purchaser without notice if the lands which he purchases are in the adverse occupancy of another. Such occupancy furnishes notice equally as effective as the recordation of a deed.[2]

---

2 "In brief, the rule is that a prospective purchaser is charged with notice of the possession of the property involved in the transaction and of the rights of the possessor. He is bound to know who is in possession, and when possession is held by one other than the vendor and owner of the record title the purchaser is not innocent, but is charged with knowledge or put on inquiry as to the right or title of the possessor or the person under whom he claims, the same as though such right or title were of record.

"If the property is not in the possession of the vendor the purchaser may not assume that the possessor is holding under or in subordination to the title as shown by the record, but must make such inquiry concerning the nature of the occupancy and the claims of the occupant as a reasonably prudent person would make. If he fails to make reasonable inquiry, he is charged with notice of all claims and facts which such inquiry would have disclosed.

"Possession is evidence of ownership and is said to be equivalent to registration, in that it gives constructive notice of the rights of the possessor. But its office is merely to put a purchaser on in-

There is undisputed testimony in this record that Albert Shofner went upon the lands about 1886 or 1887, built a house thereon, and lived upon the land until the house burned in 1906. It is undenied that he had a house on, and was living on, the land with his wife in 1889, when the deed from Mauldin to Payne was executed.

 This testimony was given by Mr. Shull, age 69, and by Mr. Woodfin, who was 75. The latter's recollection was not very good, but the same cannot be accurately said as to the testimony of witness Shull. His recollection that Albert Shofner died in 1905 or 1906 is borne out by the testimony of Mrs. Metcalf and Woodfin, and by the fact that a guardian for Albert Shofner's children was appointed in the year 1906. His testimony is corroborated in many respects, and no witness has contradicted it. It cannot be totally ignored by the Court. The testimony that Zack Shofner rebuilt a house on the lands in question in 1918 or 1919 and lived there continuously until the suit was brought, and that he built a house for Mrs. Metcalf, his sister, who also moved on the place in 1925 or 1926, and was living there up until the time of the bringing of the suit, is also entirely uncontradicted. The finding by the Court that Albert and Zack Shofner did not live upon and occupy portions of these lands for the times mentioned above, as well as the finding that they were not claiming the title to the land, is without support in the evidence. The evidence is all to the contrary and is wholly undisputed. The conclusion of the lower Court that Albert Shofner, (a) who had a valid deed to the lands; (b) who married in 1886; (c) who shortly thereafter built a house on said lands and moved in with his wife; (d) who built cribs, cleared and farmed a portion of the lands; (e) had three children born to him on the land; (f) had two wives buried on the land; and (g) who lived on it from 1886 until approximately 1905 or 1906, did not claim title to the land, is without a rational basis either in law or fact. In the absence of clear and unequivocal testimony to the contrary, or in the absence of a showing of any adverse occupancy or possession by others, it must be presumed that Albert Shofner, who had a deed to land and who lived upon it, as above stated, did so under a claim of ownership.

 In the light of the undisputed testimony that Albert Shofner lived on the lands from 1886 or 1887 to 1905 or 1906, and that Zack Shofner lived upon the land from 1918 to the date of the suit, and that also Mrs. Metcalf lived there from 1925 or 1926 to the date of the suit, no purchaser during either of such occupancies has the right to assert that he is an innocent purchaser of the lands so occupied, or that he had no notice of these adverse claims, regardless of whether or not the Shofner deeds had been re-recorded.[3]

 Such occupancy and possession by Albert and Zack Shofner was under a lawful and valid deed from the true owner,

quiry; it does not necessarily determine the nature of the inquiry or of whom it should be made." 43 Tex.Jur., page 659, § 389.

[3] "Notice by Possession—Generally.—It is a rule of general application that one who deals with land in the possession of another is chargeable with notice of all the claims of the occupant which a proper inquiry would have disclosed. If the occupant is not the owner of record, a prospective purchaser or incumbrancer should inquire whether the possession is founded on any right or title. Actual possession of land is said in some of the decisions to be 'notice of ownership,' 'evidence of title,' 'equivalent to actual notice of the rights of the possessor,' and 'equivalent to' or as 'effective as' registration. In other words, possession is regarded as notice of whatever right or title the party in possession has to the land. But there are other authorities which hold that mere possession of land is not necessarily evidence of title or even of claim thereto; that is to say, it is claimed that possession in all circumstances is not alone sufficient to visit upon a purchaser or incumbrancer implied notice of the rights of the person in possession. According to this view, the duty to inquire whether the possession is founded on any right or title arises only when the possession is of such a character as to indicate a claim of title or interest in the possessor.

"The law in reference to notice by possession is: (a) that it must be of such a character as, under the circumstances, makes it the duty of one contemplating securing a title to, or a lien upon, such land to inquire of the party in possession as to the nature of his claim; (b) that if he had made such inquiry, he would have ascertained the existence of an unrecorded conveyance to the party in possession.' " 31 Tex.Jur., page 366, § 6.

which, although unrecorded, was color of title that extended their possession to the calls of such deed. Phelps v. Pecos Valley Southern R. Co., Tex.Civ.App., 182 S. W. 1156; Art. 5508, R.S.1925; 2 Tex.Jur., page 304, § 167, pages 288-289, § 158, and page 183, § 98.

The Government claims that it has the record title out of Mauldin, and that it also obtained Zack Shofner's one-third undivided interest under the judgment in the case of Receiver of Pickering Lumber Company v. Zack Shofner, as well as the disclaimer and quit claim of Mrs. Metcalf.

It is not necessary to consider whether the disclaimer and quit claim deed executed by Zack Shofner was executed freely and voluntarily or under duress, for it is admitted by counsel for Appellant that Zack Shofner lost his one-third interest in the land by virtue of the judgment in the suit by the Receiver of Pickering Lumber Company. It is, however, undenied that the disclaimer, quit claim deed, and application-for-use as a tenant signed by Mrs. Dewey Metcalf were signed upon threat of dispossession and being removed from the premises. Should it not be considered that on the one hand were the representatives of the Government of the United States, flanked by the Sheriff of the County with an alleged writ demanding possession, while on the other side was a widow living in the log cabin, in the forks of the creek, that her brother and her neighbors had built for her after her husband had been killed? We think that the unequal status of the parties is a circumstance to be taken into consideration in determining whether or not Mrs. Metcalf knowingly and voluntarily executed these documents.

But no judgment had been procured against her or against her undivided one-third interest in the land. She, being a tenant in common, could not lawfully be disposed by a co-tenant, nor by a writ that ought not to have been directed against her but only against her co-tenant, Zack, and which writ was issued out of a case in which she was not even a party.

Moreover, it is not required that a person be put in fear of personal harm or injury in order to show duress. In Ward v. Scarborough, 236 S.W. 434, 437, the Commission of Appeals of Texas said:

"That there may be duress of property as well as of person is now thoroughly established. McGowen v. Bush, 17 Tex. [195], 196, 201; Oliphant v. Markham, 79 Tex. 543, 548, 15 S.W. 569, 23 Am.St.Rep. 363.

"To constitute duress it is sufficient if the will be constrained by the unlawful presentation of a choice between comparative evils as inconvenience and loss by the detention of property, loss of property altogether, or compliance with an unconscionable demand. 9 R.C.L. p. 723; Harris v. Cary, 112 Va. 362, 71 S.E. 551, Ann.Cas. 1913A, 1350.

"Duress of property cannot exist without there being a threat to do some act which the threatening party has no legal right to do—some illegal exaction or some fraud or deception. The restraint must be imminent and such as to destroy free agency without present means of protection. 9 R.C.L. p. 723; York v. Hinkle, 80 Wis. 624, 50 N.W. 895, 27 Am.St.Rep. 73; Taylor v. Hall, 71 Tex. 213, 216, 9 S.W. 141.

"The restraint, intimidation, or compulsion is sufficient if it induces the particular person claiming duress to perform some act which he is not legally bound to do, contrary to his will. There is no discrimination against the weak or timid. Landa v. Obert, 78 Tex. 33, 52, 14 S.W. 297; First National Bank v. Sargent, 65 Neb. 594, 91 N.W. 595, 59 L.R.A. 296, 301."

The evidence is not contradicted that Mrs. Metcalf was procured, against her will and under threats of dispossession and of having her goods put out on the ground under a tree, to do a thing which was neither her legal nor moral duty to do, and which the law could not then, and the Court ought not now, compel her to do.

Attention is also directed to the fact that Mrs. Mary Shofner Denby, one of the three heirs of Albert Shofner, did not execute any disclaimer or quit claim, and her interest would in no wise be affected by the execution of such documents by her sister Mrs. Metcalf.

Since there seems to have been a misconception of the burden of proof that was on the Government and a failure properly to recognize and appraise much of the uncontradicted evidence of the defendant, we reverse and remand the case for a new trial.

Reversed and remanded.