946 F.2d 886
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re Jeremy W. TAYLOR, Debtor.
Kenneth DiCESARE and Sara DiCesare, Plaintiffs-Appellants,
v.
Jeremy W. TAYLOR, Defendant-Appellee.
 No. 90-1427.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 31, 1991.
Decided Oct. 18, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CA-89-8-M-A)
 Argued: John William Thyden, Thyden & Gross, Washington, D.C., for appellants.
 Chris Beatley, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and CHARLES H. HADEN, II, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Kenneth and Sara DiCesare appeal the district court's grant of a directed verdict in favor of Jeremy W. Taylor. We find no error and affirm.
 
 
 2
 In October of 1981, Kenneth and Sara DiCesare contracted with Jeremy W. Taylor, Inc. to purchase certain real estate in Alexandria, Virginia.[1] The contract provided that Jeremy W. Taylor, Inc. as trustee would "satisfy all scheduled payments on [the] existing first and second deed[s] of trust out of payments paid" by the DiCesares. This arrangement was made to avoid a due on sale clause in the first deed of trust. The DiCesares paid Taylor and Taylor made the payments until December 1, 1983. In early 1984, Taylor telephoned Kenneth DiCesare and advised him that the first trust holder had discovered the conveyance of the property in violation of the due on sale clause and had given notice that they planned to foreclose on the property. Mr. DiCesare then phoned the first trustee's attorney and learned that the real reason for the foreclosure was Mr. Taylor's failure to make the monthly payments.
 
 
 3
 After learning of Taylor's delinquency, the DiCesares were able to temporarily enjoin the foreclosure of their property. The injunction gave them enough time to refinance the property. The first and second trust holders were paid off. Some delinquent taxes also were paid. Then, according to Taylor, the DiCesares settled their dispute with Jeremy W. Taylor, Inc. in 1984.
 
 
 4
 On October 4, 1985, Taylor filed for Chapter 7 bankruptcy. The DiCesares were not listed as creditors. In September 1988, the DiCesares filed a motion for judgment against Taylor in a Virginia state court. The DiCesares alleged breach of contract and gross negligence in breach of a fiduciary duty. The bankruptcy court granted Taylor's motion to have his bankruptcy estate reopened and to add the DiCesares as creditors. The DiCesares then filed a complaint to determine the dischargeability of Taylor's debt to them.
 
 
 5
 Trial was held on January 8, 1990 before the United States District Court for the Eastern District of Virginia. After the DiCesares presented their case, the district court directed a verdict in favor of Taylor. The court held that the applicable one year statute of limitations had run before the complaint was filed and, in any event, the dispute had been settled and compromised on July 24, 1984.[2]
 
 
 6
 We hold that the district court did not err in finding that the July 24, 1984 transaction constituted a compromise and settlement of the dispute between the parties. Therefore, we do not reach the other issues raised on appeal.[3]
 
 
 7
 "If a party makes a deliberate settlement of an alleged fraud, with his eyes wide open, such settlement will not be disturbed." 4A Michie's Jurisprudence of Virginia and West Virginia Compromise and Settlement § 6 at p. 40 (1990). "Parties may settle frauds as well as anything else, if they act with knowledge of the facts; and such settlement is as effectual when made by the parties as when made by a court." Cary v. Harris, 120 Va. 252, 259, 91 S.E. 166, 168 (1917). As in Cary, the plaintiffs may not ask the court to act when they have already themselves taken final action. "There must be an end to litigation." 120 Va. at 259, 91 S.E. at 168.
 
 
 8
 Mr. DiCesare testified that in March of 1984 he felt that Mr. Taylor was taking the money and embezzling it and was breaching his fiduciary duty by not making his underlying trust payments after being paid by the DiCesares.[4] Therefore, by his own admission, he was well aware of the facts when he entered into the settlement.[5] That a final settlement was agreed to is evidenced by the following testimony:
 
 DiCesare testified in part:
 
 9
 Q: Was it your understanding that that HUD-1 form totally resolved the financial dealings between the Dicesares and Jeremy W. Taylor, Inc.?
 
 
 10
 A: As far as the house went,
 
 
 11
 Q: All the financial dealings were placed into that paper, weren't they? You were done with it?
 
 
 12
 A: Yes.
 
 
 13
 Q: You and--Jeremy W. Taylor, Inc. and yourself resolved it. Money went back and forth. It was a done deal, wasn't it?
 
 
 14
 A: Concerning the house, it was, yes. (J.A. 135)
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 Q: When you left the settlement table on April 24th, was it your understanding that everything, all dealings between you and Jeremy W. Taylor, Inc. were at an end and resolved and finished?
 
 
 18
 A: At that point, yes. (J.A. 138).
 
 
 19
 "Courts will not disturb a matter once settled except for grave cause." 4A Michie's Jurisprudence of Virginia and West Virginia Compromise and Settlement § 4 (1990). We find no reason to disturb the settlement agreed to by the parties. Therefore, the judgment of the district court is
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The sale was apparently completed
 
 
 [2]
 The district court's order uses July 24, 1984 as the date of settlement; therefore, we will use that date in this opinion. In other parts of the record the date appears as April 24, 1984. The inconsistency of these dates may well result from stenographic error. The difference is of no consequence here
 
 
 [3]
 In addition to arguing that there was no compromise and settlement, the DiCesares claim the district court erred in holding that the complaint to determine dischargeability was not timely filed, in precluding the introduction of evidence of the DiCesares' emotional distress, and in failing to grant partial summary judgment as to Mr. Taylor's liability
 
 
 [4]
 Mr. DiCesare testified in part:
 MR. BEATLEY (Attorney for Taylor): So you thought Mr. Taylor was taking the money and embezzling it, correct?
 MR. DICESARE: Yes. That was my feeling.
 Q: In 1984, that was your feeling?
 A: Yes.
 Q: At least by March of '84, I take it?
 A: Yes.
 Q: I take it you also felt by March of 1984 that Mr. Taylor was breaching his fiduciary duty by not making his underlying trust payments after you made the payments to him, is that correct?
 A: Yes.
 Q: You felt that he was breaching his fiduciary duty right then, didn't you?
 A: I didn't know what a fiduciary was at the time, but yes, I felt that he wasn't doing what he should have done.
 Q: Isn't it true that all of your alleged damages, if you sustained them, were sustained by March of 1984.
 A: Out-of-pocket expenses, yes.
 
 
 [5]
 We find no merit to the DiCesares' argument that the settlement was only with Jeremy W. Taylor, Inc. and not with Jeremy W. Taylor, individually