EDWARD W. ROBY *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   March 5, 1958. — April 11, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Negligence*, Employer's liability: Federal employers' liability act. *Employer's Liability*, Pullman porter, Federal employers' liability act. *Workmen's Compensation Act*, Action against third person, Common employment, Employee of independent contractor, Federal employers' liability act. *Words*, "Employee."

A Pullman porter in the immediate employ of the Pullman Company, who was injured through negligence of a railroad while working in interstate commerce in a car of the Pullman Company being operated in a train under a contract between that company and the railroad for "Pullman service," was an employee of the Pullman Company and not of the railroad for the purposes of the Federal employers' liability act, U.S.C. (1952 ed.) Title 45, § 51, and the railroad was not liable to him under that act, even though the contract provided that the Pullman employees "while on duty . . . [should] be subject to the rules of the Railroad governing its own employees, so far as . . . applicable" and he worked "under the train conductor" as the "boss of the train" and collected tickets when the conductor was not available to do so. [371–372]

A Pullman porter employed by the Pullman Company, a self insurer under the workmen's compensation act, G. L. c. 152, who was injured while working in interstate commerce in a car of that company being operated in a train under a contract between that company and a railroad, also a self insurer under the act, for "Pullman service" which was "part of . . . the [railroad's] trade or business" and not "merely ancillary and incidental" thereto, and who received workmen's compensation payments from the Pullman Company, was

barred by § 18 of the act from maintaining an action for such injuries against the railroad under § 15; the Federal employers' liability act did not have the effect of aiding him in such action. [372–375]

"Pullman service" furnished by the Pullman Company to a railroad by contract as an essential part of the railroad's passenger service was "part of . . . the [railroad's] trade or business" and not "merely ancillary and incidental" thereto within § 18 of the workmen's compensation act, G. L. c. 152. [375]

TORT. Writ in the Superior Court dated September 15, 1952.

The action was tried before *Nagle, J.*

*Joseph Schneider,* (*Norman M. Goldberg* with him,) for the plaintiff.

*Arthur L. Brown,* (*Eugene J. Ratto* with him,) for the defendant.

WHITTEMORE, J. The plaintiff, a Pullman porter, brought an action in tort against the defendant to recover for personal injuries received on October 15, 1951, as a result of a collision of railroad cars in one of which the plaintiff was working. Following verdicts for the plaintiff under both counts, the judge entered a verdict for the defendant under count 1 pursuant to leave reserved. The case is here on a report which presents the correctness of the entry of the verdict for the defendant under count 1 and denial of its motion for entry of a verdict in its favor under count 2.

Count 1 stated a common law cause of action. Count 2 is for damages under the Federal employers' liability act, U. S. C. (1952 ed.) Title 45, § 51. The report states facts admitted to be true, as follows: The defendant was negligent; the plaintiff was not contributorily negligent; the plaintiff at the time of the accident was engaged in interstate commerce in the immediate employ of the Pullman Company; both the defendant and the Pullman Company were self insurers under the Massachusetts workmen's compensation act (G. L. [Ter. Ed.] c. 152, as amended); the plaintiff received compensation payments from the Pullman Company as a result of the accident; the car in which the plaintiff was working was either owned by or leased to the Pullman Company.

The reported evidence, taken most favorably for the plaintiff, would sustain findings as follows: The defendant's business included, as an essential part, the transportation of passengers in coaches, parlor cars, sleeping cars, and dining and club cars. "Pullman service" in all such cars, save coaches, is an essential part of railroad passenger service. The plaintiff's duties were to serve the passengers. He worked "under the train conductor" who was the "boss of the train" and when no conductor was available to collect tickets he would do so. The uniform service contract between the Pullman Company and the defendant in effect at the time of the accident provides, "Pullman shall provide suitable Pullman employes to perform the usual sleeping car and other services for passengers in cars operated under this contract. Such employes while on duty shall be subject to the rules of the Railroad governing its own employes, so far as such rules may be applicable. Pullman shall perform such duties as may be required by law in assisting passengers while entering and leaving cars operated under this contract at stations and on arrival at destination. . . ."

1. It was error not to enter a verdict for the defendant under count 2. The plaintiff for purposes of the Federal employers' liability act was an employee of the Pullman Company and not an employee of the defendant. This is established by *Robinson* v. *Baltimore & Ohio Railroad,* 237 U. S. 84, 93–94. The court there noted facts, like those stressed before us, that the employee was in certain aspects in the control of the defendant and would pick up tickets at late hours when the conductor was not about. The court, after setting forth that the Pullman Company hired and discharged the porters, paid them, defined their duties and directed and supervised them, said that ". . . Congress used the words 'employé' and 'employed' . . . in their natural sense . . . . It was well known that there were on interstate trains persons engaged in various services for other masters. Congress . . . did not use any appropriate expression which could be taken to indicate a purpose to include such persons among those to whom the railroad

company was to be liable under the Act." See *Lindsay* v; *Chicago, Burlington & Quincy Railroad,* 226 Fed. 23, 25, certiorari denied 241 U. S. 678; *Wilson* v. *Nashville, Chattanooga & St. Louis Railway,* 16 Tenn. App. 695; Annotation, 30 A. L. R. (2d) 517, 527. Accord, as to refrigerator car employees, *Gaulden* v. *Southern Pacific Co.* 78 Fed. Sup. 651, 656–657; *Moleton* v. *Union Pacific Railroad,* 118 Utah, 107. Accord as to express company messenger *Wells Fargo Co.* v. *Taylor,* 254 U. S. 175. Compare *Pennsylvania Co.* v. *Roy,* 102 U. S. 451, and, for a case under the Federal act where liability was fixed on the indirect employer under the borrowed servant doctrine, both employers being carriers and the employee a freight train conductor, *Linstead* v. *Chesapeake & Ohio Railway,* 276 U. S. 28. Compare also *Standard Oil Co.* v. *Anderson,* 212 U. S. 215; *Messina* v. *Richard Baird Co., ante,* 8, 12–13, and cases cited.

The amendment effective August 11, 1939 (U. S. C. [1952 ed.] Title 45, § 51), of the Federal act did not change the law in this respect. It broadened the act in its application to the carrier's employees; it did not expand the latter category. *Reed* v. *Pennsylvania Railroad,* 351 U. S. 502. *Latsko* v. *National Carloading Corp.* 192 Fed. (2d) 905, 909. Report of Senate Judiciary Committee to accompany Senate Judiciary Committee Report No. 661, 76th Congress, first session. The committee report shows that a proposal to broaden the act to include express, freight forwarding and sleeping car companies was expressly rejected.

2. There was no error in entering a verdict for the defendant under count 1.

The plaintiff claims under G. L. (Ter. Ed.) c. 152, § 15, which gives the plaintiff certain rights to enforce liability "[w]here the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof . . . ."

Apart from the effect of the Federal employers' liability act the plaintiff could not recover under c. 152, § 15. *Cozzo* v. *Atlantic Refining Co.* 299 Mass. 260, 262–263, and cases

cited. *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565. In the *Cozzo* case we held, in accordance with earlier cases, that the plaintiff, an employee of an insured independent contractor of the defendant who had not reserved his rights under c. 152, § 24, might not sue the defendant at common law under § 15 for negligence, saying (page 263): "This protection rests on the ground that under . . . c. 152, § 18,[1] the insurer of the general contractor or employer is required to pay compensation to workmen immediately employed by the independent contractor. Within the meaning of the workmen's compensation law such workmen are 'employees' of the general contractor or employer . . . [who is] the 'insured' and not 'some person other than the insured' . . . under . . . § 15, even though the independent contractor also is insured." In the *Clark* decision, *supra* (page 568), we said that §§ 15, 18 and 24 "in combination have resulted in the . . . rule . . . [that in the "shadow" of the general contractor or "common employer" and in the absence of notice under § 24] a cause of action for negligence causing a compensable personal injury cannot grow."

We turn to the effect of the Federal statute. The plaintiff relies on the plain proposition that if the plaintiff's work had been done by direct employees of the defendant, the defendant, because of the Federal statute, would not, under c. 152, § 18, "be liable to pay compensation under this chapter to" such employees. This follows from the settled rule that the Federal employers' liability act provides the exclusive remedy for all employees within its terms and that it dis-

---

[1] "If an insured person enters into a contract . . . with an independent contractor to do such person's work, or if such a contractor enters into a contract with a sub-contractor to do all or any part of the work comprised in such contract with the insured, and the insurer would, if such work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter if the independent or sub-contractors were insured persons. . . . This section shall not apply to any contract of an independent or sub-contractor which is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured, nor to any case where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute the work for the insured or which are under the control or management of the insured. . . ."

places all State laws, even as to compensation without fault for which it does not provide. *New York Central Railroad* v. *Winfield,* 244 U. S. 147. At most, it appears, a State act, by appropriate language, may afford a permissive tribunal to which the parties, if all agree and there is no overreaching, may have access as to an impartial local umpire. See *South Buffalo Railway* v. *Ahern,* 344 U. S. 367.

We do not think that the proposition stated has the effect under § 18 for which the plaintiff contends. We construe the critical clause in § 18 as though it provided as the test (of the right of a subemployee to proceed against the common employer) whether ". . . the insurer would, if such work were executed by [persons within the definition of] employees [under this chapter] immediately employed by the insured, be liable to pay compensation under this chapter [it being deemed to be applicable] to those employees . . .."

Section 1 (4) of c. 152, as amended, defines "employee" as "every person in the service of another under any contract of hire . . . excepting . . . [various exceptions including] persons employed by an employer engaged in interstate or foreign commerce but only so far as the laws of the United States provide for compensation or for liability for their injury or death . . . ." The effect of the Federal statute, as it has been construed, read with § 1 (4), is to deprive persons who perform duties like the plaintiff's, but in the direct employ of a carrier, of any status as employees under the workmen's compensation act. See *Reed* v. *Pennsylvania Railroad,* 351 U. S. 502. But the effect of the definition, where the injured person has no rights under the Federal statute, is of course to leave that person subject to the act.

The plaintiff points to the saving clause in c. 152, § 1, which reads: "The following words . . . shall [have the defined meaning], unless a different meaning is plainly required by the context . . ." and urges that so far as the construction of § 18 depends on the word "employees" we give it the usual nonstatutory meaning. We think that, taking the clause by itself out of context, it could be understood to mean as the plaintiff contends, that is, that the

test of the plaintiff's right is whether Pullman porters, work-
ing directly for the defendant, as its employees, in the com-
mon sense, would have rights under c. 152. But we think
that such a meaning is plainly not required by the context.
On the contrary the context speaks emphatically otherwise.
The immediate relevant context is found in the concluding
words of the sentence itself which declares the intent that
"such employees" shall have from the common employer
"any compensation which would be payable to them under
this chapter if the independent or sub-contractors were in-
sured persons." The context of the entire statute shows an
intent to have compensation rights in all cases determined
in accordance with its provisions for compensation without
fault unless the injured person is excluded from the defini-
tion of employee, or has reserved his rights under § 24. The
context speaks against letting the applicability of the Fed-
eral statute to the hypothetical fact determine the mean-
ing of the statute. The result of so doing would be that § 18,
which was designed to extend fully the coverage of c. 152,
would operate to create an exception to the general cover-
age in favor of an employee to whom the Federal statute in
the actual fact is inapplicable. Having determined that the
plaintiff was not under the Federal act because not in the
direct employ of a carrier, we need not look again outside
c. 152 to determine the respective rights of the plaintiff and
the defendant. The defendant was a self insurer under the
workmen's compensation act. The protection, equivalent
to insurance, thus afforded, was applicable to persons in its
service who were within the definition of "employee" under
the act. The plaintiff, a subemployee, was in its service and
within that definition and may not enforce common law
rights against the defendant.

The Pullman Company plainly was performing "part of
. . . the trade or business carried on by the insured" and
doing work which was not "merely ancillary and incidental"
thereto so that the exception stated in § 18 does not apply.

*Judgment for the defendant on
both counts of the declaration.*