Ingram **TEDDER**, Appellant,

v.

**MERCHANTS & MANUFACTURERS INSURANCE COMPANY OF NEW YORK**, Appellee.

No. 7470.

United States Court of Appeals Fourth Circuit.

Argued Oct. 17, 1957.

Decided Jan. 6, 1958.

Philip H. Arrowsmith, Florence, S. C. (Arrowsmith & Palles, and Mitchell D. Palles Florence, S. C., on brief), for appellant.

Joseph L. Nettles, Columbia, S. C., for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge.

This is an action by the plaintiff, Ingram Tedder, against the defendant, Merchants and Manufacturers Insurance Company of New York, a corporation, to recover damages for certain slanderous remarks alleged to have been made concerning the plaintiff by Edward Ervin, an insurance adjuster, while acting for and within the scope of his employment in the adjustment of a fire loss for the defendant company.

The defendant relied upon the following: (1) It denied that the alleged defamatory statements were made; (2) If made, it denied they were made within the scope of Ervin's employment; and (3) If made within the scope of Ervin's employment, there was no publication and the remarks were privileged.

The defendant moved for a directed verdict at the conclusion of the plaintiff's evidence, which was denied. The motion was renewed at the conclusion of all the evidence and it was again denied. All issues were submitted to the jury and there was a verdict for the plaintiff in the sum of four thousand dollars. The trial judge granted the motion of the defendant for judgment non obstante veredicto. He assigned the following as his reason:

"The adjuster was not acting within the scope of his authority when he made the alleged slanderous remarks".

From this adverse judgment the plaintiff appealed.

The jury having resolved all of the issues in the plaintiff's favor, he is

entitled to have the evidence considered in the light most favorable to him, and to be given the benefit of every inference of fact fairly deducible therefrom. Burcham v. J. P. Stevens & Co., Inc., 4 Cir., 209 F.2d 35. Viewing the evidence in this light, the most relevant facts are:

The plaintiff sharecropped tobacco on the lands of C. P. Brown, for whom Wilbur Brown was acting as attorney-in-fact. The tobacco was stored in a tenant house, or packing house, owned by C. P. Brown. The building and its contents, which were insured by the defendant company in the name of Wilbur Brown, were destroyed by fire, and the loss was referred to Adjuster Ervin for adjustment.

With the first proof of loss Ervin reported to the defendant company that C. P. Brown was the owner of the building, and that C. P. Brown and plaintiff Tedder owned the tobacco. After the defendant received this information, it advised Adjuster Ervin that "there was a few questions they wanted answered", and ordered a further investigation.

When it was shown that Wilbur Brown was the lawful attorney-in-fact for C. P. Brown, the defendant admitted its liability for the loss of the building. However, the adjuster continued his investigation of the loss of the tobacco. He examined the books of Wilbur Brown to ascertain the amount of tobacco in the building at the time of the fire. He later filed another proof of loss.

Approximately two years before the fire here mentioned the home of the plaintiff Tedder had been destroyed by fire. Tedder had insurance with a fire insurance company other than the defendant company; his loss was paid. The defendant company, while investigating the fire loss of the tobacco under Brown's policy, instructed the adjuster to make an investigation of the incident in which Tedder's home was burned. Ervin thought such investigation was necessary for the proper adjustment of the claim for the loss of the tobacco which he had for adjustment. He testified as follows:

"Q. Did you have anything to do with any loss of Mr. Tedder's own house some time before? A. In the investigation of Mr. Brown's loss, in the investigation of his fire, we did go back and make a partial investigation on this other.

"Q. Was it necessary for you to go back into a loss a year prior to the one that you were connected with? A. I think to arrive at a definite conclusion on anything you have to know the background of it. * * * "

Ervin continuing:

"A. We took a statement from Mr. Tedder with regard to the fire that he had.

"Q. Why was it necessary to take a statement? A. Just part of our investigation.

"Q. You had instructions to go into the matter further, didn't you? A. Yes, sir, I had instructions to investigate the matter further."

Some time after the second proof of loss was made, Brown, not having received his money, went from his home in Lake City to Adjuster Ervin's office in Sumter to inquire as to why he had not received the check for the insurance. It was at this conference that the slanderous remarks were alleged to have been made.

When Brown asked Ervin why the insurance had not been paid, Ervin told him he would have to file another proof of loss; he also told Brown that the defendant insurance company had definite records in its New York office which would show as a fact that Tedder had burned his home some two years before for the purpose of collecting the insurance thereon; that the defendant knew and could prove that Tedder had stolen the tobacco out of Brown's tenant house, or packing room, and then burned the building. He further stated that the defendant company would not pay Brown one penny on his claim if Tedder, the sharecropper, was going to share in it in

any way. He also advised Brown to get rid of Tedder as a sharecropper, and stated that if Brown had another fire loss, the defendant company definitely would not pay it, because Tedder was a known arsonist and a bootlegger. The foregoing conversation took place in Adjuster Ervin's office while Brown and Ervin were discussing the settlement of the tobacco loss, and before the final proof of loss was signed by Brown. After this conversation Brown told Tedder he could not keep him as a sharecropper and gave as his reason the conversation he had with the adjuster, which he related to Tedder. Brown then discharged Tedder as a sharecropper.

█ In order to hold a corporation liable for a slander uttered by its agent, it must appear that the agent at the time was acting within the scope of his employment, and in the actual performance of the duties of the corporation touching the matter in question. Johnson v. Life Insurance Company of Georgia, 227 S.C. 351, 88 S.E.2d 260, 55 A.L.R.2d 813.

Brown had assumed, when he filed the first proof of loss, that the insurance covered the entire tobacco crop. He, therefore, filed a claim for the value of the entire crop, and intended to turn over to Tedder one-half of the money. There was some difference of opinion between the insurance company and its adjuster as to whether Tedder had an interest in the insurance money. Brown was asked:

"Did you inform Mr. Ervin that Tedder had an interest in the tobacco which was destroyed by the fire?

"A. I did, sir, and Mr. Ervin agreed with me that he felt that Mr. Tedder would have an interest, but the company didn't feel that he had an interest."

Mr. Ervin also stated:

"I thought the coverage would extend to both of them."

Counsel for Tedder argue that Brown was correct in assuming that the entire crop of tobacco was covered by the policy, contending the title to the tobacco was vested in Brown until there had been a division of the same. Lipscomb v. Johnson, 123 S.C. 44, 115 S.E. 753; Newton v. Bennett, 111 S.C. 1, 96 S.E. 620; Loveless v. Gilliam, 70 S.C. 391, 50 S.E. 9.

█ It is not necessary for us to decide whether Brown was entitled to collect all the tobacco insurance and, as to this point, we make no decision. Suffice it to say that at the conference in Sumter, after the defamatory remarks were made about Tedder, and after Brown was advised the insurance company would not pay one penny of his claim if Tedder was to share in it, Brown agreed to settle for one-half of his original claim. The jury may have inferred that Ervin made the defamatory remarks to influence Brown to settle for less than his original claim, and that Brown was influenced to accept one-half of the original claim because of the defamatory remarks. It is clear that the business entrusted to the adjuster brought about the occasion for the slanderous remarks. Whether or not Ervin made the remarks, and, if made, whether they were made within the scope of his employment, under the evidence in this case, were questions for the jury. Johnson v. Life Insurance Company of Georgia, supra; Mann v. Life & Casualty Ins. Co. of Tennessee, 132 S.C. 193, 129 S.E. 79.

The defendant relied on the cases of Courtney v. American Railway Express Co., 120 S.C. 511, 113 S.E. 332, 24 A.L.R. 128, and Bosdell v. Dixie Stores Co., 168 S.C. 520, 167 S.E. 834. The facts of those cases are readily distinguishable from the facts in the case now before the Court. In those cases it was not shown that the agent was engaged in any business whatsoever for the company when the defamatory remarks were made, and the remarks were made concerning an incident that had occurred some time in the past; whereas, in this case the defamatory remarks were made by the agent of the defendant while he was actually engaged in negotiating for an adjustment of the loss.

■ The defendant contends there was no publication of the defamation because Brown was acting as Tedder's agent and defamatory words spoken to Brown, as agent for Tedder, were as if they had been spoken to Tedder and, if so, there would be no publication.

Brown had taken out insurance on the entire tobacco crop in his name. He was trying to collect the entire loss. He recognized that Tedder would be entitled to one-half of the proceeds from the insurance for the tobacco loss, but in all of his efforts to collect the entire loss he was acting on his own volition. Tedder had not authorized Brown to act as his agent in connection with the insurance loss; indeed, Tedder did not know that the tobacco was insured, and had no knowledge that Brown was making a claim for insurance on the tobacco. The sharecropper relationship of itself did not constitute Brown Tedder's agent. It was said in the case of Powers v. Wheless, 193 S.C. 364, 9 S.E.2d 129, 130:

"A sharecropper is nothing more than a laborer or servant of the landlord or master * * *. The general duties of a sharecropper cannot be so construed as to make a sharecropper an agent generally of the landlord."

■■ It would follow that the mere relationship of sharecropper would not of itself constitute the landlord the general agent of the sharecropper. If Brown held himself out to be acting as agent for Tedder he did so without authority from Tedder. It is fundamental that agency may not be established by the declarations of the agent alone. Mebane v. Taylor, 164 S.C. 87, 162 S.E. 65. The District Judge submitted the agency theory of the defense to the jury and charged it:

"I charge you that if you find that Ervin made any remarks to Brown about Tedder in the course of a discussion of matters in which Brown was speaking or acting for or on behalf of Tedder, then your verdict should be for the defendant."

■ The defendant further contends that if the defamatory remarks were made by its agents within the scope of his employment they were privileged. If the remarks were privileged they could only be qualifiedly privileged. The trial court charged the jury that even though they believed the defamatory remarks were qualifiedly privileged, they must also believe that the remarks were such as the occasion warranted and must have been made in good faith to protect the interest of the one who made them and the person to whom they were addressed, and that such defamatory remarks would lose their privileged aspect if the defendant was actuated by ill will by what it did and said, with the design to causelessly and wantonly injure the plaintiff, and as to whether there was such privileged occasion, and whether it had lost its privileged aspect were questions for the jury.

The defense of this case was largely based on the grounds that the defamatory remarks were never made, but if they were made that they were not made within the scope of the employment of the adjuster. These theories are, of course, inconsistent with the defense of privilege; however, the question of privilege was submitted to the jury and, in view of the vicious import of the defamatory remarks and the discharge of Tedder as a sharecropper as a result thereof, the jury may have found that the defamatory remarks were actuated by ill will with the design to wantonly injure Tedder, and were no longer privileged.

■ The District Court should not have entered judgment for the defendant, notwithstanding the verdict, if there was any evidence in the case that would authorize a verdict for the plaintiff.

In the case of Burcham v. J. P. Stevens & Co., Inc., supra, Chief Judge Parker stated at page 37 of 209 F.2d:

"It is well settled that on a motion for a directed verdict or on motion for judgment n.o.v. based on such motion, the evidence must be considered in the light most favorable to the party against whom the directed verdict or the judgment n.o.v. is asked, that any conflict in evidence must be resolved in his favor and that every conclusion or inference that can be legitimately drawn therefrom in his behalf must be drawn."

See also Stanford v. Pennsylvania R. Co., 7 Cir., 171 F.2d 632; Sivert v. Pennsylvania R. Co., 7 Cir., 197 F.2d 371.

We think there was substantial evidence upon which the jury could base its verdict for the plaintiff. Accordingly the judgment of the District Court is reversed, with directions to enter judgment for the plaintiff in accordance with the verdict of the jury.

Reversed and remanded.