Dewitt T. WARNER, Appellee,

v.

BILLUPS EASTERN PETROLEUM COM-
PANY and Hess Oil & Chemical
Corporation, Appellants.

No. 12643.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 5, 1968.

Decided Feb. 19, 1969.

Charles H. Gibbs, Charleston, S. C., (Sinkler, Gibbs & Simons, Charleston, S. C., on brief) for appellants.

John M. Bleecker, Jr., Charleston, S. C., (Wilmer L. Thompson, Charleston, S. C., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

PER CURIAM:

These appeals are from an order of the district court denying defendant's motion for judgment n. o. v. and, alternatively, for a new trial. Having concluded from a review of the record that there is sufficient evidence to support the verdict of the jury and that the award of $35,000 in damages, after the order of a remittitur by the district court, is, under the circumstances, not excessive,[1] we affirm.

This case involves a fairly atypical arrangement in the management of gasoline stations, whereby the defendant ("Hess")[2] sublet the station site to plain-

---

1. The verdict of the jury was in the amount of $75,000, the full sum prayed for by plaintiff. The district judge ordered a remittitur of $40,000. In appeal number 12,644, plaintiff sought to contest the propriety of the district court's remittitur order. However, plaintiff now takes the position that he cannot consent to a remittitur and thereafter appeal. Plaintiff, therefore, agreed to a voluntary dismissal of his cross-appeal pursuant to Rule 42 (b), Federal Rules of Appellate Procedure. Thus, the only question relating to the amount of the judgment which is presently before the Court is whether $35,000 is "so monstrous and shocking" as to require that the judgment be set aside.

2. The agreement herein referred to was made between plaintiff and the Florida

tiff and conveyed to him all of the improvements, equipment, inventory, and good will. As part of the same transaction, the parties entered into a "Franchise Agreement," the terms of which obligated Hess to undertake the complete operation, control and management of the station with any profits to be paid to, and any losses collected from, the plaintiff. The thrust of plaintiff's complaint is that Hess breached this Franchise Agreement by numerous and consistent acts of mismanagement, which produced a precipitous decline in the previously profitable status of the station, all to the detriment and injury of the plaintiff.

Plaintiff's testimony tended to establish the following: While there was some decline in both gallonage of gasoline sold and profits received by plaintiff in the period 1960–1965, this decline reached dramatic proportions in 1966 when gallonage dropped some 20% under the previous year, and a small profit in 1965 was converted into a $6,000 loss in 1966. Plaintiff agrees that, under the Franchise Agreement, Hess was not a guarantor of the profitability of the station. Nevertheless, plaintiff asserts that the precipitous decline in the station was directly attributable to the Hess mismanagement. In particular, plaintiff's evidence tended to demonstrate that the station managers employed by Hess were generally unfit, that they slept on the job, that they spent few hours at the station supervising operations and that when they were present they did not work, that they drank excessively, and that they could occasionally be found in jail. In addition, there was testimony that the station attendants did not give proper attention to customers' vehicles, that part of the station was improperly demolished by Hess, that a station

manager refused to allow an attendant to sell tires, and that the station frequently was not open during normal working hours.

Hess does not seriously contest any of the evidence presented by plaintiff but, rather, dismisses this evidence as a series of isolated and trivial occurrences. Furthermore Hess vigorously contends that the decline in the station's profitability was actually the result of a legitimate management decision in 1966 to terminate the sale of tires, batteries, and accessories ("T.B.A.") as part of the operation at all of the Hess stations.[3] However, the removal of T.B.A. does not explain why other stations operated by Hess showed a slight decline in gallonage sold immediately after the discontinuance of T.B.A. followed by a significant recovery, while at the same time the decline in plaintiff's station continued apace. Indeed, the trend accelerated and showed little sign of any reversal.

Of course, it is clear that when the district judge considered defendant's motion for judgment n. o. v. and for a new trial he was obligated to view the evidence in the light most favorable to the plaintiff. We have previously held that judgment n. o. v. should not be granted "if there was any evidence in the case that would authorize a verdict for the plaintiff." Tedder v. Merchants & Manufacturers Ins. Co., 251 F.2d 250, 254 (4 Cir. 1958). And, as has been well stated by the South Carolina Supreme Court,

"more than one reasonable inference can be drawn from the testimony * * *. The jury has the especial prerogative to decide the facts, if the evidence tends to sustain the reasonable probability of the manner or way relied upon by the plaintiff even if

Service Corporation, which was later succeeded by Billups Eastern Petroleum Corporation and still later by Hess Oil and Chemical Corporation. By virtue of corporate succession, Hess is the actual defendant in interest in this suit.

3. The district judge concluded that removal of the T.B.A. was a justifiable man-

agement decision which was not violative of the Franchise Agreement. Hence, the jury was not permitted to consider this factor in determining the existence of a breach of contract or in assessing damages.

**1060**

the injury might have occurred in one of a dozen ways. The law does not require proof of a certainty in a civil suit." Hiers v. South Carolina Power Co., 198 S.C. 280, 17 S.E.2d 698, 701–702 (1941).

We think that the evidence fully supports the jury's conclusion that plaintiff was damaged by the Hess acts of mismanagement.

 Finally, we do not consider an award of $35,000 under the circumstances of this case to be grossly excessive or improperly speculative in view of plaintiff's loss of past and anticipated future profits, together with his investment in the business venture. *Cf.*, Palmer v. Connecticut R. & Light Co., 311 U.S. 544, 559–561, 61 S.Ct. 379, 85 L.Ed. 336 (1941); Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562–566, 51 S.Ct. 248, 75 L.Ed. 544 (1931). Accordingly, the judgment of the district court is

Affirmed.