Ryland S. **FELTS**, Plaintiff,

v.

**SEABOARD COAST LINE RAILROAD COMPANY**, Defendant.

**Civ. A. No. 384–69–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 3, 1971.

---

[1] See pp. 3–4, *supra*.

**498**

Willard J. Moody, Raymond H. Strople, Moody, McMurran & Miller, Portsmouth, Va., for plaintiff.

R. Kenneth Wheeler, Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., for defendant.

## MEMORANDUM OPINION

KELLAM, District Judge.

Ryland S. Felts instituted this action against Seaboard Coast Line Railroad Company (Seaboard) to recover damages for injuries alleged to have been sustained. He asserts that, while an employee of The Pullman Company (Pullman Company) he was performing services for Seaboard and was also an employee of Seaboard. He grounds his recovery under the Federal Employers' Liability Act (FELA). After filing the original complaint, he amended it to include Pullman Company as a defendant. Pullman Company's motion to dismiss it as a defendant was subsequently sustained, on the grounds that its employees were covered by State Workmen's Compensation Acts and not by FELA. That is, it is not a common carrier by railroad within the meaning of the Act. However, Felts continued his assertion that he was an employee of both the Pullman Company and Seaboard at the time of the incident in issue.

The issue was tried to the jury which returned a verdict in favor of plaintiff for $20,000.00. Seaboard moved the Court to enter judgment in its favor n. o. v., or in the alternative to set aside the verdict and grant it a new trial on all issues, or, as the second alternative, to grant it a remittitur. Seaboard's grounds for its motion boil down to—

(a) The sufficiency of the evidence to establish that Felts was an employee of Seaboard;

(b) Errors in the charge of the Court;

(c) Errors in the exclusion of evidence offered by Seaboard; and

(d) Excessiveness of the verdict.

I

We commence with the rule that issues of fact should be left to the determination of the jury, and a court should not undertake to substitute its opinion or findings therefor. Likewise, a jury's determination of the credibility of the witnesses and the weight which they see fit to give to their testimony is binding on the Court. However, the jury is not permitted to speculate or conjecture, or to render a verdict based on sympathy. If there is no credible evidence in the record upon which to base a verdict, the Court has a duty to act. Otherwise, the rule would have to be that the findings of the jury would be final and not subject to question. The rule to be followed by the trial court is set out in Brady v. Southern Railway Company, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943). There, the verdict of the jury was set aside and judgment entered for defendant. In affirming the judgment n. o. v. the Court at page 479, 64 S.Ct. at page 234 said:

The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact--in this case, the jury. Western & Atlantic R. R. Co. v. Hughes, *supra* [278 U.S. 496, 49

S.Ct. 231, 73 L.Ed. 473] ; Baltimore & Ohio R. R. Co. v. Groeger, 266 U.S. 521, 524 [45 S.Ct. 169, 170, 69 L.Ed. 419]. Cf. Gunning v. Cooley, 281 U.S. 90, 94 [50 S.Ct. 231, 233, 74 L.Ed. 720] ; Commissioners [of Marion County] v. Clark, 94 U.S. 278, 284 [24 L.Ed. 59]. When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims. Galloway v. United States, 319 U.S. 372 [63 S.Ct. 1077, 87 L.Ed. 1458] ; Pence v. United States, 316 U.S. 332, [62 S.Ct. 1080, 86 L.Ed. 1510] ; Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521 [45 S. Ct. 169, 69 L.Ed. 419], note 1; Anderson [Adm'x] v. Smith, 226 U.S. 439 [33 S.Ct. 176, 57 L.Ed. 289] ; Coughran v. Bigelow, 164 U.S. 301, 307 [17 S.Ct. 117, 119, 41 L.Ed. 442] ; Gunning v. Cooley, 281 U.S. 90, 93 [50 S.Ct. 231, 232, 79 L.Ed. 720], note; Seaboard Air Line [Ry.] v. Padgett, 236 U.S. 668, 673 [35 S.Ct. 481, 482, 59 L.Ed. 777] ; Parks v. Ross, 11 How. 362, 373 [13 L.Ed. 730]. See IX Wigmore on Evidence (3d ed., 1940), §§ 2494 et seq.

The rule in this circuit is set forth in Club Ramon, Inc. v. United States, 296 F.2d 837 (4th Cir. 1961). At page 840, the Court said:

It is, of course, the duty of the trial judge to leave issues of fact to the determination of the jury but he is not obliged to submit issues as to whose outcome no reasonable doubt can be entertained. "And where the evidence is 'so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury.' * * * The rule is settled for the federal courts, and for many of the state courts, that whenever in the trial of a civil case the evidence is clearly such that if a verdict were rendered for one of the parties the other would be entitled to a new trial, it is the duty of the judge to direct the jury to find according to the views of the court. Such a practice, this court has said, not only saves time and expense, but 'gives scientific certainty to the law in its application to the facts and promotes the ends of justice.' * * * The scintilla rule has been definitely and repeatedly rejected so far as the federal courts are concerned. * * * " Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 395, 77 L.Ed. 819. And see Wachovia Bank and Trust Co. v. United States (4 Cir. 1961) 288 F.2d 750, 757; Wright v. Grain Dealers Nat. Mut. Fire Ins. Co., (4 Cir. 1950) 186 F.2d 956, 958.

The Court again spoke on the issue, and directed entry of verdict n. o. v. in Business Development Corporation of North Carolina v. United States, 428 F. 2d 451 (4th Cir. 1970), where the Court said:

A direction should be granted where there is "no substantial evidence to support" the verdict asked of the jury. Hawkins v. Sims, 137 F.2d 66, 67 (4 Cir. 1943). Furthermore, even though resolution of inferences must be left to the jury, nevertheless "it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4 Cir.), cert. denied 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958). That is this case.

In Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, 386 F.2d 193 (4th Cir. 1967), in approving the action of the trial court in directing a verdict in favor of the shipowner against the

stevedore, the Court said "there was no factual controversy which the jury had to decide for the facts were clear and undisputed."

The Court again spoke in United States v. Shipp, 409 F.2d 33 (4th Cir. 1969), concerning the test and, although a criminal case, the Court pointed out the same rule applied in civil cases, namely:

These general principles demonstrate that it is not ordinarily within the appellate court's province to review a jury's resolution of issues of credibility. The trial judge, who like the jury had the advantage of observing the witnesses as they testified, is vested with broader power. Even when there has been substantial evidence which required him to submit the case to the jury, he may in his discretion set the verdict aside and grant a new trial if he thinks the verdict is against the weight of the evidence, and it is his duty to do so if he is convinced that permitting the verdict to stand would result in a miscarriage of justice. The power exists in both civil and criminal cases.

In Wachovia Bank and Trust Company v. United States, 288 F.2d 750 (4th Cir. 1961), in approving the entry of a directed verdict, the Court quoted from the opinion of Judge Soper in United States v. Grannis, 172 F.2d 507, at page 513 (4th Cir. 1949), setting aside the judgment based on a jury verdict, where he said:

In the federal courts the judge should direct a verdict for either party, even if the party has the burden of proof, when the facts are so convincing that reasonable men could not differ as to their significance; and this is especially true when there is no conflict in the evidence. (Citations omitted) " * * * When, on the trial of the issues of fact in an action at law before a Federal court and a jury, the evidence, with all the inferences that justifiably could be drawn from

it, does not constitute a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, so that such a verdict, if returned, would have to be set aside, the court may and should direct a verdict for the other party."

In Ford Motor Company v. McDavid, 259 F.2d 261, at page 266 (4th Cir. 1958) cert. denied 358 U.S. 908, the Court set aside a judgment for plaintiff, based on the verdict of a jury, and directed entry of judgment for defendant, saying that the old rule of not permitting a jury to draw any inference from circumstantial evidence, if one is as probable as the other, has been replaced by the more sensible rule—

that it is the province of the jury to resolve conflicting inferences from circumstantial evidence. Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.

*See also* Norfolk Southern Ry. Co. v. Davis Frozen Foods, 195 F.2d 662 (4th Cir. 1952); Wright v. Grain Dealers Nat. Mut. Fire Ins. Co., 186 F.2d 956 (4th Cir. 1950); Hartman v. Baltimore & Ohio R. Co., 89 F.2d 425 (4th Cir. 1937).

## II

■■ On a motion for judgment notwithstanding the verdict or for a new trial, the Court must view the evidence in the light most favorable to the plaintiff, and such motions should not be granted if there was evidence in the case that would justify the verdict as found by the jury. If more than one reasonable inference can be drawn from the testimony, the Court does not have the right to reject the inference drawn by the jury, or substitute its judgment or opinion therefor. Warner v. Billups Eastern Petroleum Company, 406 F.2d 1058 (4th

Cir. 1969); Shelton v. Jones, 356 F.2d 426 (4th Cir. 1966); Richmond Television Corp. v. United States, 354 F.2d 410 (4th Cir. 1965); Goforth v. Avemco Life Ins. Co., 368 F.2d 25 (4th Cir. 1966).

### III

Keeping in mind the above principles, the evidence in this case establishes that on or about May 7, 1968, Felts, a Pullman Company employee, was assigned by Pullman Company to duty as a pullman conductor on a pullman car attached to the train of Seaboard known as the "Silver Comet." The train originated in New York and terminated at Birmingham. It became a Seaboard train only after it reached Richmond, Virginia.

Pursuant to his assignment Felts reported to the train in Richmond. When he arrived he found the Pullman Company porter was unable to open the vestibule trap door. Felts asked two unidentified station employees to open it. According to Felts, these men performed the act by hitting the trap with a sledge hammer. Later, when the train arrived in Petersburg, the pullman porter again experienced difficulty with the trap. In attempting to open this trap, Felts contends he injured himself.

Felts asserted he reported the alleged injury to the train conductor, but the train conductor denies ever receiving any such report. Seaboard asserts it received no information concerning the injury until the filing of this action. After his return to Richmond, Felts was referred by the Pullman Company to its physicians for examination and treatment.

First, we must determine from the evidence whether Felts was in fact an employee of Seaboard. This determination cannot be made by considering only one fact or set of facts, but must be determined from all of the evidence. To commence, Felts, and all Pullman Conductors, are hired, discharged, furloughed, and granted vacations solely by the Pullman Company. All of the equipment and uniforms used by Felts and other Pullman Conductors are furnished by Pullman. It alone fixed and pays the wages of Felts. All of the fringe benefits received by Felts or any Pullman Conductor are provided by the Pullman Company. The work schedule, and the assignment of Pullman Conductors and porters, is done solely by the Pullman Company. It keeps the records of time for its employees, and provides for their sick leave and other benefits. Seaboard had no control over the hiring, discharging, assignment, granting of vacations, seniority, wages, hours or place of employment, furnishing of equipment, assignment of work or duties, or fringe benefits for Felts. Except as hereafter set out, Seaboard had no direction or control over the work of Felts or the manner in which he performed his work. In summary, The Pullman Company selected its servants, defined their duties, fixed and paid their wages, directed and supervised the performance of their tasks, placed and removed them at their pleasure, provided them with uniforms and other equipment, and provided for their fringe benefits.

When Seaboard, or any other railroad, has need for pullman cars, it makes a request of The Pullman Company to deliver the cars at a stated location and time, with the proper personnel aboard. Pullman owns the cars.

When a pullman car is attached to the train, it becomes a part thereof. The train conductor is in charge of the train, and is the person primarily responsible for its safe operation. He has jurisdiction over every person on the train. He has the responsibility of determining when and where the train will stop, of maintaining the schedule, and if a dispute arises, he has final say. He has the power to determine when and where a pullman car will be cut from the remainder of the train, but when the car goes, so do the Pullman employees. While he may have the right to eject a Pullman em-

ployee from the train, he does not have the right to discharge him from his employment. As a part of the contract between the railroad and the Pullman Company, the pullman conductor agrees to be bound by the rules and regulations of the railroad in the performance of his duties as a pullman conductor. While the railroad agrees to furnish certain services for Pullman including linens, maintenance of air-conditioning equipment, storage space, ice, fuel, etc., nowhere is the railroad granted control over any employee of Pullman to make such a person an employee of railroad. It may well be that the Pullman Company employees, in the performance of their duties for Pullman, also performed services for railroad. But, there is no evidence the train conductor had any power or authority to require or direct the Pullman Company employees to perform services for the railroad. So long as the activities of Felts conformed to the rules and regulations of the railroad, and did not endanger the safety of the train, Seaboard had no control over how Felts performed his duties. Railroad's control was to see that the work was performed in accordance with the contract, in order to accomplish the results contemplated by the parties in making the contract. Taylor v. Local No. 7, Inter. U. of Journeymen Horseshoers, etc., 353 F.2d 593 (4th Cir. 1965); N. L. R. B. v. A. S. Abell Co., 327 F.2d 1 (4th Cir. 1964). Some right of control to supervise the manner in which the work is done, or to inspect the work in its performance, does not necessarily create the relationship. Of importance, is the nature and amount of control reserved. Taylor v. Local No. 7, etc., *supra*. As the Supreme Court said in Robinson v. Baltimore & Ohio Railroad Company, 237 U.S. 84, 93, 35 S.Ct. 491, 493, 59 L.Ed. 849 "The service provided by the Pullman Company was, it is true, subject to the exigencies of railroad transportation, and the railroad company had the control essential to the performance of its functions as a common carrier." And continuing, "To this end the employees of the Pullman Company were bound by the rules and regulations of the railroad company."

Felts says that he performed services for the railroad, in that he collected the railroad tickets and later turned them over to the railroad conductor. This same contention was raised in the *Robinson case, supra*. Here, like in Robinson, "it was merely an incidental matter which cannot be deemed to qualify the character of plaintiff's employment." Continuing in the *Robinson case*, the Court said:

We are of the opinion that Congress used the words 'employee' and 'employed' in the statute in their natural sense, and intended to describe the conventional relation of employer and employee. It was well known that there were on interstate trains persons engaged in various services for other masters. Congress, familiar with this situation, did not use any appropriate expression which could be taken to indicate a purpose to include such persons among those to whom the railroad company was to be liable under the act.

We conclude that the plaintiff in error was not an employe of the defendant company within the meaning of the employers' liability act, and that the judgment must be affirmed.[1]

*See, also* Wells Fargo & Company v. Taylor, 254 U.S. 175, 41 S.Ct. 93, 65 L.Ed. 205, where the Court held that an employee of an express company which had been granted the exclusive privilege of conducting the express business over the lines of a railroad company, and which transports by cars which it provides and attaches to the railroad's

1. Quoted with approval in Edwards v. Pacific Fruit Express Co., 390 U.S. 538, 88 S.Ct. 1239, 20 L.Ed.2d 112.

trains, express matter, etc., constitutes a business distinct from that of the railroad, and such employee of the express company is not the employee of the railroad. Since *Robinson*, efforts have been made by Pullman employees to recover of the railroad, asserting such a person is an employee of the railroad. In no cited case has a Pullman employee recovered. *See* Lindsay v. Chicago, B. & Q. R. R., 226 F. 23 (7th Cir. 1915); Wilson v. Nashville, C. & St. L. Ry., 16 Tenn.App. 695, 65 S.W.2d 637 (1933); Taylor v. New York Central Railroad Co., 294 N.Y. 397, 62 N.E.2d 777 (1949); Roby v. Boston & Maine R. R., 337 Mass. 369, 149 N.E.2d 661 (1958); Gloster v. Pennsylvania R. R. Co., 214 F.Supp. 207 (W.D.Pa.1963).

Plaintiff says that The Pullman Company is owned by the railroads and that while Felts was working for Pullman, he was in fact working for the railroad. In Hetman v. Fruit Growers Express Company, 346 F.2d 947, 949 (3d Cir. 1965), the Court in determining Fruit Growers was not a common carrier by railroad, referred to Gaulden v. Southern Pac. Co., 78 F.Supp. 651 (N.D.Cal.1948), affirmed per curiam 174 F.2d 1022 (9th Cir. 1949), "where it was held that the Pacific Fruit Express Company, which conducted a business similar in all critical aspects to that of the defendant, here, and which was also wholly owned by railroads, was not a 'common carrier by railroad' within the meaning of the Act."

The FELA provides in Section 51 that every common carrier by railroad while engaged in interstate commerce shall be liable in damages to any person suffering injury "while he is employed" by such carrier in such commerce. To come within the provisions of the Act, the evidence must show that plaintiff was injured "while he was [is] employed" by the Seaboard. In Hetman v. Fruit Growers Express Company, *supra*, the Court, following a review of numerous cases on the issue, and saying it could find no case to the contrary, said:

> The sum of the foregoing cases, and we have found none to the contrary, is that one who is employed by an independent contractor is not an "employee" of, or "employed" by, a "common carrier by railroad" merely because the activity in which he is engaged at the time of his injury is such that it could be characterized as an integral part of the railroad's business, or in the words of the present plaintiff, "work that defendant was legally bound to do as a common carrier and [which was] traditionally performed by railroad employees."

### IV

It is clear that FELA does not cover employees of The Pullman Company. Robinson v. Baltimore & Ohio R. R., *supra*. The holding in Robinson was approved and affirmed in Edwards v. Pacific Fruit Express Co., 390 U.S. 538, 88 S.Ct. 1239, 20 L.Ed.2d 112 (1968), without dissent. In *Edwards* the Court said that the *Robinson case* had pointed out that, "It was well known that there were on interstate trains persons engaged in various services for other masters." In *Edwards* the Court held that employees of Pacific Fruit Express Company were not covered by the FELA. The opinion set forth:

> In 1939 Congress substantially amended the Federal Employers' Liability Act. Because of such decisions as *Wells Fargo, supra,* and *Robinson, supra,* one of the proposed amendments would have changed the coverage language of § 1 of the Act to read as follows: "Every common carrier by railroad, including every express company, freight forwarding company, and sleeping-car company, engaged in commerce. . . ." Obviously the proposal was designed to nullify this

Court's construction of the Act which had excluded employees of sleeping-car companies and express companies. In committee the proposal received little support and was even opposed by certain segments of organized labor, and it failed to pass. By refusing to broaden the meaning of railroads, Congress declined to extend the coverage of the Act to activities and facilities intimately associated with the business of common carrier by railroad.

Felts and others employees of The Pullman Company are covered under state compensation laws, as were the employees of Pacific Fruit Express Company. In *Edwards* the Supreme Court said that the "question of whether employees shall rely on state compensation or on the Federal Employers' Liability Act is a pure question of legislative policy . . . we do not think this Court should depart from 60 years of history to do what is a job for Congress."

The holding of the *Robinson case* has been consistently followed by all courts, without exception. See cases cited above on page 503.

### V

Plaintiff relies on Baker v. Texas & Pacific R. R., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959). There the Court said the issue "contain[s]ed factual elements such as to make it one for the jury under appropriate instructions as to the various relevant factors under law." It was further pointed out that a supervisor of the railroad "in the daily course of the work exercised directive control over the details of the job performed by the individual workmen," and other details, and that each case must be decided on its own peculiar facts. Defendant also relies on Smith v. Norfolk and Western Railway Co., 407 F.2d 501 (4th Cir. 1969). There, Smith was an employee of Baker Drive-Away Company, Inc., which unloaded automobiles from cars of the railroad company. The Court said "in our case the plaintiff was *not* an employee of the railroad but, instead, was employed by the company held to be performing railroad functions." Continuing, the Court said the railroad "contracted with the shippers specifically to assume the duty of unloading" and were paid for so doing; that the unloading "had been specifically assumed by the railroad as part of its regular business." In the case at bar, Felts makes no contention his employment by The Pullman Company was to perform services which the railroad had contracted to perform, or which had historically and traditionally been done by the railroad. The duties performed by Felts were the same as those which had always been performed by Pullman conductors.

### VI

Other issues have been raised in defendant's motion, but in view of what has been said above, the Court does not reach the other issues. Accordingly, the motion of the railroad for judgment n. o. v. is granted, the verdict of the jury is set aside and judgment is entered for the railroad. Counsel will within seven (7) days present a duly endorsed order in accordance with this opinion. In lieu of the endorsed order, counsel may give notice to opposing counsel of the time when an order will be presented, serving with said notice a copy of the proposed order.