**AZALEA DRIVE–IN THEATRE, INCOR- PORATED and Twin Drive-In Thea- tre, Inc., Plaintiffs,**

v.

**Edward A. SARGOY et al., Defendants.**

**Civ. A. No. 73–347–N.**

United States District Court, E. D. Virginia, Norfolk Division.

Feb. 25, 1975.

Stanley E. Sacks, William P. Williams, Sacks, Sacks & Tavss, Louis H. Cohn, Norfolk, Va., for plaintiffs.

Lewis T. Booker, Benjamin C. Ackerly, Hunton, Williams, Gay & Gibson, Richmond, Va., for defendants.

## MEMORANDUM DECISION

KELLAM, Chief Judge.

Plaintiff corporations, which own and operate outdoor motion picture theatres in the Tidewater area of Virginia, instituted this action pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, and 28 U.S.C. §§ 1331(a), 1332 and 1337,[1] alleging that the defendants, motion picture distributing corporations and their agents, had violated the federal antitrust laws by combining or conspiring to restrain interstate trade or commerce,[2] by monopolizing or attempting to monopolize such trade or commerce,[3] and by fixing prices.[4]

The case was tried to the jury on September 23, 24 and 25, 1974. Prior to the presentation of any evidence, this Court, finding that plaintiffs had failed

---

1. While four jurisdictional bases are asserted, primary reliance is placed upon Section 4 of the Clayton Act, 15 U.S.C. § 15 which provides:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

2. Section 1 of the Sherman Act, 15 U.S.C. § 1 declares illegal "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . ."

3. Section 2 of the Sherman Act, 15 U.S.C. § 2 provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . shall be guilty of a misdemeanor . . . ."

4. Provisions declaring price fixing illegal are codified as Section 1 of the Robinson-Patman Antidiscrimination Act, 15 U.S.C. § 13.

to include price fixing in the final pre-trial order as one of the triable issues, ruled that evidence of price fixing would be inadmissible (Transcript p. 19). After the presentation of all the evidence, plaintiffs' attorneys withdrew all proposed instructions concerning the issue of monopolization and the case was submitted to the jury solely on the issue of whether the defendants had combined or conspired in restraint of interstate trade or commerce. The jury returned a $100,000.00 verdict in favor of plaintiffs.

At the conclusion of plaintiff's case and again after all evidence had been presented, defendants moved for a directed verdict pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The Court withheld ruling on said motions and the jury returned the aforesaid verdict adverse to defendants. They now move, pursuant to Rule 50(b), for judgment notwithstanding the verdict or, in the alternative, for a new trial.

The issues to be decided are: (1) whether the doctrine of collateral estoppel bars recovery in this action, and (2) assuming that doctrine to be inapplicable, whether the evidence is insufficient to support the verdict of the jury.[5] For the reasons set out below, we hold that the doctrine of collateral estoppel does not bar recovery and that the evidence is sufficient to support the jury verdict.

## I

## FACTUAL BACKGROUND

Plaintiff corporations exhibit motion pictures to the public. To obtain some of the films so exhibited, they entered into formal agreements with the nine defendant distribution corporations whereby the distributors agreed to lease film to the exhibitors in return for the exhibitors' promise to pay as rent a percentage of the gross admission receipts on each film exhibited. Pursuant to the leasing agreement, exhibitors authorized the distributors to audit their books to insure that the proper rent was being paid. For more than 25 years, the distributors have utilized the New York based law firm of Sargoy, Stein and Hanft for this purpose. If an audit discloses underreporting of admissions, the law firm is authorized to collect whatever rent is owed either through settlement or litigation.

In November, 1970, the law firm notified plaintiffs that their books would be audited. On December 14, Philip Kornfeld, an accountant employed by the law firm, travelled to Norfolk and commenced the audit. The audit lasted one week whereupon Kornfeld returned to his New York office to analyze the data collected.

Kornfeld subsequently returned to Norfolk on January 15, 1971, to discuss with plaintiffs the results of his investigation. He advised them that he had uncovered underreporting of admissions in excess of $240,000.00 for the five-year audit period. Plaintiffs denied any underreporting and Kornfeld returned to New York.

On February 12, 1971, Kornfeld returned to Norfolk to elicit an offer of settlement from plaintiffs. After extensive negotiations, plaintiffs executed a $70,000.00 promissory note in favor of the law firm, in full settlement of the claim for past due rent. Plaintiffs, however, defaulted when the first installment came due and the noteholder brought suit in the Court of Law and Chancery of the City of Norfolk (now Circuit Court of the City of Norfolk) to recover on the instrument.

---

5. In addition to their primary contentions, defendants assert that the form of verdict was improper, and that this Court erred (1) in its charge to the jury, (2) in permitting the introduction of a deposition of a deceased witness taken in a prior state action, and (3) in refusing to grant their motions for a directed verdict. Taking these assertions singly or in combination, they do not constitute sufficient grounds for granting a new trial, nor do they require us to set aside the verdict and enter judgment n. o. v. in favor of defendants.

In defending the state action, the exhibitors argued that the note was invalid (1) for lack of consideration, (2) because it was executed under duress, and (3) because it was obtained in violation of the federal antitrust laws. The exhibitors also raised the alleged antitrust violation to support a $210,000.00 counterclaim.

The noteholder filed a plea in abatement to the counterclaim and a motion to strike the antitrust defense. Judge Ryan, the presiding judge in the state court action, accepting the contention that the antitrust issues are exclusively within the province of the federal courts, sustained both motions by order dated August 7, 1972. Preserved were the defenses of duress and failure of consideration.

While the state action was pending, the exhibitors filed their antitrust complaint in this Court and moved for a stay of the state proceedings pending resolution of the antitrust action. This motion was denied and on January 4, 1974, the state court judge ruled that the promissory note was enforceable. Shortly thereafter judgment was entered in favor of the noteholder.

In his opinion, Judge Ryan posed the legal issues before him, asking, *inter alia,* "Was there *sufficient and convincing evidence* of duress on the part of the plaintiffs [noteholders] to the detriment of the defendants [exhibitors]?" (Emphasis added).

In resolving this question, Judge Ryan stated:

> Counsel have cited to the Court an abundance of case law and other authorities. The Court concludes that the authorities cited by the plaintiff [noteholder] are more persuasive, considering the peculiar facts and cir-

cumstances of the case. In addition, it seems that to a broad degree the issues of law outlined above turn on issues of fact. As the trier of the facts, the Court decides same in favor of the plaintiffs.

In the case at bar, the defendant motion picture distributors argue that the finding of no duress in the prior state action bars relitigation of that issue in this Court under the doctrine of collateral estoppel.

## II

### COLLATERAL ESTOPPEL

■■■ Under the doctrine of res judicata, a final judgment on the merits in one suit bars a subsequent suit involving the same parties or their privies based on the same cause of action. Collateral estoppel, on the other hand, is more narrow. Generally speaking, collateral estoppel bars the same parties or their privies[6] from contesting in a subsequent proceeding on a different cause of action any question or fact actually litigated and determined in the prior suit.[7]

A classic statement of the rule is found in Southern Pac. R. R. Co. v. United States, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897), wherein the Supreme Court stated:

> [A] right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established . . . ."[8]

6. The plaintiffs and defendant law firm in this action were parties to the state action. There is no dispute that the additional named defendants, the nine motion picture distributing corporations and the two auditors, Kornfeld and Fallick, were privy to the state action.

7. For a comprehensive discussion of the doctrine of collateral estoppel, see 1B Moore's Federal Practice ¶ 0.441 et seq.; Restatement of Judgments § 68 et seq.

8. Accord Cromwell v. County of Sac, 94 U.S. (4 Otto) 351, 24 L.Ed. 195 (1876); Russell v. Place, 94 U.S. (4 Otto) 606, 24 L.Ed. 214

■■ While the doctrine of res judicata bars subsequent litigation on the same cause of action of all matters which were or might have been litigated in the first suit, collateral estoppel operates as a bar in a suit on a cause of action different from that forming the basis for the original suit *"only* as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." Cromwell v. County of Sac, 94 U.S. (4 Otto) 351, 353, 24 L.Ed. 195 (1876) (Emphasis added). Thus, collateral estoppel does not bar inquiry into issues which might have been litigated in the prior suit, but were not; nor does it apply to any matter which, albeit litigated, was not essential to the judgment rendered in the prior adjudication.

■ It is well settled that the party seeking to invoke the doctrine of collateral estoppel must establish that in a prior suit—(1) the same issue (2) was actually litigated and judicially determined, and (3) that the determination made of the issue in the prior action was essential to the judgment there rendered. *See generally* 1B Moore's Federal Practice ¶ 0.443[1], [2], [3] and [4]; Restatement of Judgments § 68. If any one of these elements is lacking, the doctrine is inapplicable.

(a)

With this background, we turn to the question whether the state court's finding that the promissory note was not executed under duress precludes relitigation here of that issue and ultimately bars recovery in this action. It is clear from examination of the pleadings in the state action that the issue of duress was actually litigated.[9] Judge Ryan's opinion establishes that the issue was finally determined by a court of competent jurisdiction. Further, the finding of no duress clearly was necessary to the state judgment since, had duress been established, judgment would have been entered in favor of the maker of the note.

■ The finding of the state court that the note was not executed under duress is clear, and the doctrine of collateral estoppel would bar relitigation of that issue in this action.[10] We find, however, that plaintiffs have not sought to establish, contrary to the state finding, that the promissory note was executed "under duress." What they seek to litigate here is the narrower, previously undecided issue of whether Kornfeld, acting on behalf of the motion picture distributors, made a threat to deprive the plaintiffs of film in violation of the federal antitrust laws. It is the defendant's contention that a finding that no such threat was made is implicit in and essential to Judge Ryan's conclusion that there was no duress.

As was stated previously, Judge Ryan found that there was not "sufficient and

(1876); Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 671, 64 S.Ct. 268, 88 L.Ed. 376 (1944); Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597–99, 68 S.Ct. 715, 92 L.Ed. 898 (1948); United States v. Munsingwear Inc., 340 U.S. 36, 38, 71 S.Ct. 104, 95 L.Ed. 36 (1950); Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 101, 74 S.Ct. 414, 98 L.Ed. 532 (1954); Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

9. In Talcott v. Allahabad Bank Ltd., 444 F. 2d 451, 459–60 (5th Cir. 1971) the court stated: "[W]here a question of fact is put in issue by the pleadings, and is submitted to the jury or other trier of facts for its determination, and is determined, that question of fact has been 'actually litigated.'" Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 671, 64 S.Ct. 268, 88 L.Ed. 376 (1944). See generally Restatement of Judgments § 68, comment (c) (1942).

10. We thus reject the plaintiffs' contention that the doctrine is inapplicable because the standard of duress in a federal antitrust action is somehow different from the standard applied in a state action. Our review of the cases establishes that elements necessary to prove duress are the same in federal and state courts. *See* e. g., Jack Winter, Inc. v. Koratron Co., 329 F.Supp. 211, 213 (N.D. Cal.1971).

convincing evidence of duress." Obviously, that decision required an examination of the facts and circumstances surrounding the execution of the $70,000.00 note. The exhibitors argued that the auditor, Kornfeld, advised them at the February 12, 1971 meeting that unless the instrument was signed, his principals, the nine motion picture distribution corporations, would supply no more film. Fearing that they would be forced out of business, the exhibitors claimed that such threats denied them the exercise of free will and that the note was executed in response to the threats, and for no other reason. The noteholder, of course, denied any such threats were made.

While the state court concluded that the promissory note was enforceable, Judge Ryan made no explicit findings as to why the defense of duress had not succeeded. The defendants here argue that the finding of no duress necessarily was predicated on a finding that no threat was made. In other words, the defendants ask this Court to *equate* a finding of no duress with a finding of no threat.

### (b)

Generally, duress may be said to exist whenever one party exerts pressure on another which induces the other to enter a contract or otherwise act under circumstances which deprive the person pressured of the exercise of free will. *See generally* 25 Am.Jur.2d, Duress and Undue Influence, § 1; 17 C. J.S. Contracts § 168; Restatement of the Law of Contracts, § 492. In Virginia, the pressure exerted, whether by action or by threat, must be "wrongful." *E. g.*, Bond v. Crawford, 193 Va. 437, 69 S.E.2d 470, 475 (1952).[11] Moreover, it

has been held in Virginia, that duress, as a species of fraud, "must be clearly proved," Ford v. Engleman, 118 Va. 89, 86 S.E. 852, 855 (1915), and that it is "not readily accepted as an excuse." Seward v. American Hardware Co., Inc., 161 Va. 610, 171 S.E. 650, 662 (1933). *See also* Cary v. Harris, 120 Va. 252, 91 S.E. 166 (1917).

While the language used to define duress differs from jurisdiction to jurisdiction,[12] "underlying all definitions of 'duress' is the dual concept of external pressure and internal surrender, or loss of volition in response to outside compulsion." 17 C.J.S., *supra*, at 943. The authorities are in agreement that the ultimate fact to be determined whenever the question of duress is raised is whether the purported victim's will was so overcome as to deprive him of free choice. *See generally* 25 Am.Jur.2d, *supra*, § 3, at 353 and 355–57; 17 C.J.S., *supra*, at 948. In this regard a threat, demand, or act which falls short of subverting the will of the victim cannot constitute duress, notwithstanding the fact that the threat, demand, or act is itself wrongful.

Judge Ryan, in holding that the note was not executed under duress, did not indicate which of the two elements was lacking. Rather, he merely stated that his legal conclusion turned on questions of fact and, as trier of the facts, he resolved them in favor of the noteholder. If the only manner in which Judge Ryan could have "resolved the facts" consistent with his ultimate finding of no duress was to determine that no threat was made, we could infer that necessary, even though unarticulated, fact and plaintiffs here would be collaterally estopped from asserting in this Court that a threat was made.[13]

---

11. In *Bond,* the Court clearly stated that "a threat to do what one has the legal right to do . . . is not such duress as to justify rescission of a transaction induced thereby." 69 S.E.2d at 475.

12. *See, e. g.*, 17 C.J.S. Contracts § 168 at 942–43 and cases there cited.

13. Professor Moore states that "if the rendering court made no express findings on issues raised by the pleadings or the evidence, the court may infer that in the prior action a determination appropriate to the judgment rendered was made as to each issue that was so raised and the determination of which was

There are, however, at least three ways in which Judge Ryan could have "resolved the facts" in order to reach the ultimate finding of no duress. First, he could have found no threat was made. Second, he might have found that a lawful threat was made. A third, yet equally plausible finding could have been that an unlawful threat was made but did not deny the victim the exercise of his free will. Thus, it is impossible to infer from Judge Ryan's ultimate finding of no duress only one set of facts necessary to that determination.

The Supreme Court has stated, however, that to discover precisely what questions were determined by the judgment in a prior action, we may go behind the judgment and examine the pleadings and evidence in the prior action to determine which facts were essential to the judgment there rendered. United Shoe Machinery Corp. v. United States, 258 U.S. 451, 459, 42 S.Ct. 363, 66 L.Ed. 708 (1922); Russell v. Place, 94 U.S. (4 Otto) 606, 608, 24 L.Ed. 214 (1876).

Our review of the state court pleadings, record, and opinion, does not establish whether Judge Ryan found that a threat was or was not made. Accordingly, the doctrine of collateral estoppel in no way precludes litigating that fact in this action since it is clear that Judge Ryan could have decided that the note was not executed under duress whether or not he found that a threat was made.

■ We have discussed, in some detail, what was decided in the former action and the distinction between a finding of no duress and the finding that no threat was made. The reason for so doing is apparent. While it may be argued the above distinction is merely se-

mantical, our review of the law of duress establishes that two elements are essential. A threat (or other unlawful demand or act) is merely one element and thus the words "threat" and "duress" cannot be equated. The importance of the distinction for purposes of this action is also illustrated by the question which the jury submitted to the Court during its deliberations. It read: "Is the *threat* made by the defendant to the plaintiff in reference to the film cut off considered to be a violation of the Anti-Trust law?" (Emphasis added). The question clearly indicates that the jury was focusing not on the issue of duress, but upon the narrower question of whether a threat was made, and if so, its effect.[14]

■ For the reasons previously stated we hold that plaintiffs are not collaterally estopped from litigating in this action the question whether a threat was made notwithstanding the previous finding in the state proceedings that the $70,000.00 note was not executed under duress. Accordingly, as to this issue, defendants' motions for judgment notwithstanding the verdict, or for a new trial, are denied.

### III

### SUFFICIENCY OF THE JURY VERDICT

■ The second major issue raised by the defendants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial is whether there is sufficient evidence to support the verdict of the jury. In considering these motions, we start with the proposition that the evidence must be viewed in the light most favorable to the plaintiffs. Gallick v. B & O Ry., 372

necessary to support the judgment." 1B Moore's Federal Practice ¶ O.443[4] at 3913. As to the use of the "necessary inference," see Talcott, Inc. v. Allahabad Bank, Ltd., *supra*, 444 F.2d at 460.

14. Were we of the opinion that the jury, in reaching its verdict, resolved (or attempted to

resolve) the question of duress contrary to the resolution made in the state proceedings, we would grant a new trial. We are confident, however, that the jury never reached that issue, focusing instead upon the narrower, previously undecided question of whether a threat was made.

U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); Sentilles v. Inter-Caribbean Corp., 361 U.S. 107, 109, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959); Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916; Warner v. Billups Eastern Petroleum Co., 406 F.2d 1058, 1059 (4th Cir. 1969); Burcham v. J. P. Stevens & Co., Inc., 209 F.2d 35, 37 (4th Cir. 1954). If, resolving all evidentiary conflicts in favor of plaintiffs and giving them the benefit of every reasonable inference, there is evidence upon which the jury reasonably could return a verdict in favor of plaintiffs, judgment n. o. v. should not be granted. Mays v. Pioneer Lumber Corp., 502 F.2d 106, 108 (4th Cir. 1974); American Realty Trust v. United States, 498 F.2d 1194, 1198 (4th Cir. 1974); Warner v. Billups Eastern Petroleum Co., *supra*; Tedder v. Merchants & Manufacturers Ins. Co., 251 F. 2d 250, 254 (4th Cir. 1958); Burcham v. J. P. Stevens & Co., Inc., *supra*. *See also* Continental Ore Co. v. Union Carbide Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962).

 It is solely the prerogative of the jury to weigh the credibility of the witnesses, resolve contradictory evidence and inferences, and to render the ultimate conclusion as to the facts. Continental Ore Co. v. Union Carbide Corp., *supra*, 370 U.S. at 700–701, 82 S. Ct. 1404; American Realty Trust v. United States, *supra*. The jury, as factfinder, can "discard or disbelieve whatever facts are inconsistent with its conclusion." Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946). This Court is powerless to reject the findings and inferences of the jury and substitute its judgment therefor, if there is "any evidence in the case that would authorize a verdict for the plaintiff." Tedder v. Merchants & Manufacturers Ins. Co., *supra*, 251 F.2d at 254. *See* Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 114–15, 83 S.Ct. 659, 9

L.Ed.2d 618 (1963); Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 110, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959); *See also* this Court's discussion of these issues in Felts v. Seaboard Coast Line R. Co., 55 F.R.D. 497, 498–500 (E.D.Va. 1971).

With these principles in mind, we have examined and re-examined the record. The case was submitted to the jury solely on the issue whether the defendants had violated Section 1 of the Sherman Act, 15 U.S.C. § 1.[15] That section declares illegal "[e]very contract, combination . . . , or conspiracy, in restraint of [interstate] trade or commerce . . . ."

Defendants contend that to recover in this action plaintiffs must establish three elements: (1) a combination or conspiracy among the defendants to unreasonably restrain interstate trade or commerce; (2) that the auditor, who threatened discontinuance of film service, was acting within the scope of his employment as agent for the distributors and clothed with authority (either actual or apparent) to so threaten; and (3) that as a result of (1) and (2), plaintiffs suffered damage to their business or property. Defendants argue strenuously that plaintiffs have offered *absolutely no evidence* on any of these points.

 We would be less than candid if we did not state that the evidence in the case was conflicting and did not make out a strong case. A different finding could easily have been reached. However, the rule in this Circuit is clear. Judgment n. o. v. should not be granted unless the evidence is "so clear that reasonable men could reach no other [conclusion]" than the one suggested by defendants. Burcham v. J. P. Stevens & Co., *supra*, 209 F.2d at 38; American Realty Trust v. United States, *supra*, 498 F.2d at 1198.

---

15. As was stated previously, the issues of price fixing and monopolization were dropped from the case prior to its submission to the jury. *See* notes 3 and 4, *supra*, and accompanying text.

■ As factfinder, the jury resolved the facts in favor of plaintiffs. The verdict establishes that they chose to believe plaintiffs' witnesses. The conflicts in testimony were resolved in favor of plaintiffs. The fact the Court may have resolved the facts in favor of defendants does not mean that there is no evidence in this case which supports the verdict of the jury.

■ On the question of a conspiracy or combination among the defendants, there is no direct evidence; but the jury could have reasonably inferred from the circumstantial evidence that the defendants were acting in concert.[16] There is no evidence that the agent of the distributors, Kornfeld, had actual authority to threaten a discontinuance of film service, but his apparent authority to so threaten may reasonably be inferred from the evidence. Finally, the evidence establishes the fact that plaintiffs were injured by the acts of defendants and this Court may not substitute its judgment for that of the jury with respect to the amount of damages.[17]

For the reasons given above, defendants' motions for a directed verdict and to set aside the verdict and enter judgment n. o. v. or, in the alternative, for a new trial, are denied.

---

16. The principle is well settled that a combination or conspiracy in violation of the Sherman Act may be established by circumstantial, as well as direct, evidence. *See, e. g.,* Interstate Circuit, Inc. v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939); Norfolk Monument Co. v. Woodlawn Memorial Gardens, Inc., 394 U.S. 700, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969); Eastern State Retail Lumber Dealers Assn. v. United States, 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490 (1913); United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260. *See generally* 54 Am.Jur.2d, Monopolies, Restraints of Trade, and Unfair Trade Practices, § 21 et seq.

17. Once the fact of damages is established, precision is not required in fixing the amount. Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946); South-East Coal Co. v. Consolidation Coal Co., 434 F.2d 767, 794 (6th Cir. 1970); Warner v. Billups Eastern Petroleum Co., 406 F.2d 1058, 1060 (4th Cir. 1969). While speculation is improper, the jury may make a "just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances 'juries are allowed to act upon probable and inferential, as well as direct and positive proof.' " Bigelow v. RKO Radio Pictures, Inc., *supra* 327 U.S. at 264, 66 S.Ct. at 580 *quoting from* Story Parchment Co. v. Paterson Co., 282 U.S. 555, 561–64, 51 S.Ct. 248, 75 L.Ed. 544 (1931). *See also* Great Coastal Express, Inc. v. International Brotherhood of Teamsters, etc., 511 F.2d 839 (4th Cir. 1975).